[L. A. No. 3716. In Bank.—November 23, 1917.]

## CLARENCE EUGENE GEORGE, Respondent, v. TRINITY CHURCH (a Corporation), Defendant, and MAGNUS. JOHNSON, Appellant.

NEGLIGENCE—INJURIES TO EMPLOYEE OF SUBCONTRACTOR—LIABILITY OF CONTRACTOR.—A contractor is not liable for injuries sustained by a servant of a subcontractor, through the weakening of the supports of a scaffolding built by the contractor for the subcontractor, at a time and under circumstances when the subcontractor was, by the contract, bound to construct it, the contractor not being in any event bound to keep the scaffolding in repair, or to inspect it to guard against weakening of supports.

APPEAL from a judgment of the Superior Court of Santa Barbara County, and from an order denying a new trial. S. E. Crow, Judge.

The facts are stated in the opinion of the court.

Richards & Carrier, and George H. Moore, for Appellant.

G. H. Gould, for Respondent.

MELVIN, J.—Action for damages against two defendants. Each appeared separately. Judgment was entered in favor of defendant Trinity Church after its motion for nonsuit was granted. Johnson, the other defendant, made a similar motion, which was denied. Against him the jury rendered a verdict in the sum of five thousand dollars, and judgment for that sum with costs was entered. Johnson appeals from the judgment and from an order denying his motion for a new trial.

The plaintiff was injured by reason of the breaking of a scaffolding upon which he was at work in a new building erected for Trinity Church. He was an employee of the subcontractors, Smith and Stalhuth, engaged in doing the stone work required in the construction of the building.

Trinity Church employed Magnus Johnson to superintend the erection of its new building in accordance with certain plans and specifications. In the written contract between the church and Johnson it was provided that the latter should give the same attention to the building as would be given by a person constructing it under contract, so far as direction and superintendence were concerned, except that he should not be required to pay for labor or for material used in the construction of the building save a mixer, a buzz-saw, and scaffolding planks, which he was to furnish.

In the contract for the cement, stone, and concrete work, Trinity Church was designated as "owner," Johnson as "contractor," and Smith and Stalhuth as "subcontractor." This agreement provided, among other things, that the subcontractor should set up any scaffolding that might be specially required for his work. In the specifications accompanying the earlier contract by which Johnson agreed to supervise the building it was set forth that the carpenter was to "set up all scaffolding and staging that may be required for the erection of the building." Johnson was to hire all workmen; was to have control of the work subject to the supervision of the architects; and was to pay the men weekly, receiving reimbursement from the church at the beginning of the following week upon presentation of his pay-roll. The church was to pay for all materials used in the work at least monthly, and it was set forth in the agreement that "subcontractors shall be paid by the party of the first part [the church] upon certificate of the architects." Johnson's compensation was to be a fixed sum if the building should be erected for the estimated cost, but his compensation was to be increased or diminished in a manner provided in the writing, according to the completion of the building for less or more than the estimate.

It appears without conflict or question that plaintiff was an employee of the subcontractor. Indeed, he so testified himself, saying that he was hired and paid by Mr. Smith of Smith and Stalhuth. He was a mason engaged in "point-

ing'' the stone—the last stage in the completion of the work.
A ''ledger'' of the scaffold upon which he was standing gave
way, causing his fall and consequent injury.

It was charged in the complaint that the defendants after
the erection of the platform (which later gave way under
plaintiff's weight) had, with gross negligence, removed the
wooden supports necessary to sustain the ''ledgers'' or trans-
verse pieces of wood which were nailed to uprights of the
staging and upon which the boards of the platform rested.
Appellant insists that although the scaffolding was erected
originally by the carpenter in his employ, it was then suitable
for all purposes; that it was constructed for the stone masons
and at their special instance; that there is no evidence that
he or anyone in his service weakened the platform by re-
moving the supports of the ledgers; and that if they were
removed (and there is evidence to indicate such fact), the
removal came at a time when the duty of inspection and safe
maintenance rested not upon him but upon the subcontractor.
We think this position is well taken.

Respondent points to evidence of the removal of another
scaffolding in an adjoining aisle. It is argued that the long
ledgers of the other scaffolding which had been nailed to the
uprights of the one at which the accident occurred probably
afforded some support to the platform, and that this being
removed by appellant's workmen weakened the structure.
Therefore it is argued that the overt act of appellant was the
occasion of the injury. Respondent also cites the statement
of Mr. Jacobs, one of the men in charge of the carpenters, to
the effect that ''if they had nailed that ledger after they cut
it off, as it ought to have been, you [respondent] would have
been all right.'' Appellant, on the other hand, calls atten-
tion to the testimony of certain of plaintiff's witnesses that
the ''ribbons'' or supports nailed under the ''ledgers'' were
so near to the stone columns as to interfere with washing and
pointing said columns, and we are asked to infer that these
''ribbons'' were removed by those whom they thus incon-
venienced. But there is no evidence to justify a conclusion
that the weakening of the platform was done by servants of
either respondent or appellant. Hackett, who was employed
by the subcontractor, testified that the scaffold was erected
by the carpenter for the use of the masons and at his special
request. He also said that it had supported the weights of

workmen and materials far in excess of the strain upon it at the time of the collapse. Thus we have uncontradicted testimony of the suitability of the scaffold when built. True it was not constructed by Smith and Stalhuth's men, but it was built for the subcontractor at a time and under circumstances when, under the contract, said subcontractor was bound to set up any scaffolding specially required for the work. Neither Trinity Church nor Johnson was bound to keep the platform in repair nor to inspect it vigilantly from time to time to see that its supports were not weakened. (*Cotter* v. *Lindgren,* 106 Cal. 602–606, [46 Am. St. Rep. 255, 39 Pac. 950].) This is a case in which the general contractor (even if we treat Johnson as one in view of the peculiar terms of his contract of employment) may not be held responsible for injuries caused by the fault of a subcontractor. A subcontractor bears the same relation to the contractor that the latter does to his employer and the rule governing each status is the same. (*Boswell* v. *Laird,* 8 Cal. 469, [68 Am. Dec. 345]; *Barton* v. *McDonald,* 81 Cal. 265, [22 Pac. 855]; *O'Hale* v. *Sacramento,* 48 Cal. 212; *Stewart* v. *California Improvement Co.,* 131 Cal. 125, [52 L. R. A. 205, 63 Pac. 177, 724]; *Louthan* v. *Hewes,* 138 Cal. 116, [70 Pac. 1065]; *Green* v. *Soule,* 145 Cal. 96, [78 Pac. 337]; *Fay* v. *German General Ben. Soc.,* 163 Cal. 118, [124 Pac. 844].)

There is nothing in *Fountain* v. *Willard Slater Co.,* 172 Cal. 129, [155 Pac. 630], which conflicts with our conclusions in this case. In that case the general contractor not only erected but maintained a temporary staircase for the use of all persons employed in the building. It was held that a servant of a subcontractor might recover for injuries from the general contractor. The facts of the two cases are very different and the two decisions not at all in conflict.

The judgment and order are reversed.

Henshaw, J., Victor E. Shaw, J., *pro tem.,* Shaw, J., Sloss, J., Lorigan, J., and Angellotti, C. J., concurred.

Rehearing denied.