[Civ. No. 1967. Third Appellate District.—May 7, 1919.]

## HELENA BROWN et al., Appellants, v. THE BOARD OF TRUSTEES OF LELAND STANFORD JUNIOR UNIVERSITY et al., Respondents.

[1] EMPLOYER AND EMPLOYEE—KNOWLEDGE OF DANGER—NOTICE TO EMPLOYEE—ASSUMPTION OF RISK.—Where an employee, as readily as his employer or any other person, by the exercise of his faculties of sight and judgment, in an ordinarily diligent manner, could have observed and known of the danger to life and limb attending employment in and about the unsupported walls of a burnt building, where, at the time of an accident, he was employed, such employee, in taking and entering upon the employment, assumed the risk of the employment. It was not necessary, under such circumstances, to instruct or warn the employee of the danger of the employment to which he had been assigned.

[2] ID.—DUTY OF EMPLOYER TO WARN OF DANGER OF EMPLOYMENT.— The law casts upon an employer the duty of warning or instructing his employees of the danger of the employment to which he assigns them only when such danger is concealed or hidden or where inexperienced youths or persons are assigned to employment on, in, or about complicated and naturally dangerous machinery or mechanical devices.

[3] ID.—PLACE OF EMPLOYMENT—DUTY OF EMPLOYER AND EMPLOYEE. The employer is compelled to provide for his employee a place in which to work, not absolutely safe, but as safe as he can make it under the circumstances, and when he has used the usual or requisite precautions to that end his duty to his employees in that respect has been performed. On the other hand, the law

---

1. Duty of master to warn servant where dangers of employment are patent or obvious, note, 29 L. R. A. (N. S.) 111.

2. Duty of master to warn servant against dangers not reasonably to be apprehended, note, 21 L. R. A. (N. S.) 89.

3. Duty of master to provide servant safe place in which to work, note, 6 L. R. A. (N. S.) 602.

demands that one who is working in a place where he is exposed to danger shall himself exercise his faculties for his own protection, and does not permit a recovery for damages resulting from neglect of this rule.

[4] ID.—RELATION OF OWNERS TO CONTRACTORS—INDEPENDENT CONTRACTORS.—Where the owners· of premises which are partially destroyed by fire enter into an agreement with a firm of contractors for the removal of the junk and debris from the burned premises, under which such contractors not only are given possession of the premises pending the completion of the contract, but have full, unrestricted, and unqualified control over the manner in which or the means by which the work of removing the junk is to be done, the latter are independent contractors.

[5] ID.—INDEPENDENT CONTRACTOR DEFINED.—An independent contractor is one who, in rendering services, exercises an independent employment or occupation, and represents his employer only as to the results of his work, and not as to the means whereby it is to be accomplished.

[6] ID. — NEGLIGENCE OF INDEPENDENT CONTRACTOR — LIABILITY OF OWNERS.—The owners of premises cannot be held liable for any negligence of which independent contractors might have been guilty in prosecuting the work under their contract and which negligence might have been the direct cause of injury or damage to a third person or an employee.

[7] ID.—KNOWLEDGE OF LATENT DEFECT—DUTY OF OWNER TO GIVE WARNING.—If there existed a latent or hidden defect in the walls of the burnt premises fraught with danger to those working or being about and near the walls, or a dangerous defect other than that which was obvious to any person of common intelligence or sense, and of which defect the owners had knowledge but which neither the independent contractor nor its employee were aware at the time they entered upon the work of removing the junk and debris from the premises, it would have been the duty of the owner to warn the contractors or its employee of the added danger following from such latent defect, and failure on their part to do so in such case might justly subject them to liability for any danger resulting from such defect.

[8] RES IPSA LOQUITUR — MEANING OF MAXIM.—The maxim that "where defendant owes to plaintiff the duty to use care, and the thing causing the accident is shown to be under the management of defendant or his servants, and the accident is such that in the ordinary course of things does not occur, if those who have the management and control use proper care, the happening of the accident, in the absence of evidence to the contrary, is evidence that it arose from lack of requisite care, merely means that when the conditions arise and exist, as indicated in the definition thereof, the burden is cast upon the defendant to explain how

the accident happened, and, if he fails to do so, it must be accepted as an established fact that the accident was due to want of proper care on the part of the defendant.

[9] ID.—WHEN MAXIM NOT APPLICABLE.—The rule or maxim of *res ipsa loquitur* is never applicable where the thing causing the accident is not under the exclusive control or management of the defendant or the party whose negligence it is charged is the efficient or proximate cause of the accident, or his servants.

APPEAL from a judgment of the Superior Court of Tehama County. John F. Ellison, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. M. Lee, George R. Freeman and Frank Freeman for Appellants.

McCoy & Gans and Wilson & Wilson for Respondents.

HART, J.—The action was brought by Helena Brown, the widow of Alexander Brown, and by ten children and grandchildren of the deceased, to recover damages for the death of said Alexander Brown, alleged to have been caused by the negligence of the defendants.

The corporation defendant was the owner of a tract of land in Tehama County known as the "Stanford Vina Ranch," and defendant Stimmel was the superintendent thereof.

Upon the close of plaintiff's case the court granted a motion made by defendants for a nonsuit, judgment followed in their favor, and plaintiffs prosecute this appeal from said judgment.

The record discloses the following facts: On and prior to August 18, 1915, there was upon the Stanford Ranch a building known as the winery, which was constructed with brick walls and which contained a large amount of machinery. This building was destroyed by fire on said date, but the brick walls remained standing.

On September 15, 1915, Daniel R. Buckley, a member of the firm of Buckley & Brownstone, tendered to defendant Stimmel, as superintendent of the Stanford Vina Ranch, the following offer, in writing:

"I hereby offer you $700.00 for all the metal and iron in the Fermenting House—Engine Room (except boilers)—Distillery—and Carpenter Shop and the scrap pointed out in the

yard near the Tool Washerhouse and the scrap in the bone yard. . . . As part of the consideration I agree to clean up and remove all metal and iron of every kind and description from the ruins of the buildings described above without any expense whatever to you.   I agree to remove this iron and metal before October 20th, 1915.

"Sincerely yours,

"Daniel R. Buckley.

"Accepted and receipt of $100.00 acknowledged.

"W. G. Stimmel, Supt."

The deceased, Alexander Brown, was employed by Buckley & Brownstone to assist in the work of removing the metal from said building, and on September 24th, while so employed, one of the walls of the building fell upon him and caused his death.   No one was with him at the time, the nearest witnesses being from two hundred to three hundred feet distant.

The complaint alleged that after the fire the brick walls of the winery were left standing unsupported; that they were dangerous and menacing and were known to defendants so to be, but that they failed to guard against such danger; that defendants were careless and negligent in failing to take down such walls or to take measures to protect persons against danger.   This negligence, together with the alleged fact that defendants did not warn decedent of the defective and unsafe condition of the walls, "and in carelessly and negligently permitting said decedent in or near the vicinity of the said brick wall," are alleged to have resulted in the death of decedent; and it was further alleged that Buckley, Brownstone, and the decedent had no knowledge of the defective and unsafe condition of said walls.

Arthur R. Thorpe testified that Brown, at the time the wall fell on him, was engaged in removing hoop iron from the fermenting-room.   T. J. Frost testified that he heard the crash when the wall fell and ran to the scene of the accident; that it was the south wall of the building that had fallen. The defendant W. G. Stimmel, called as a witness by plaintiffs, testified to the same fact, and Mrs. Helena Brown testified as to the injuries received by her husband, his age, etc., and there was also testimony as to the amount decedent was earning as wages.

The motion for nonsuit was properly granted.

The evidence shows that the fire which destroyed the distillery or winery building occurred several weeks prior to the date of the accident causing the death of the deceased. As the complaint alleges, the evidence shows that the walls of the building were of brick and that said walls remained standing from and after the fire until the date of the accident. There is no evidence that there was any hidden or concealed defect in the walls by reason of which they or either of them were more likely to fall than from the mere fact that they stood unsupported. In other words, there was, so far as the evidence shows, no other danger in the walls to persons working or employed about them or who might for any reason have been near or about them before the accident than such danger as was plainly obvious to any person of average intelligence and sense, viz., that they stood unsupported. The evidence does not directly show what caused the wall to fall. As to that, the only evidence is the circumstance that the walls remained standing until the work of removing the junk and debris from between them was begun and that the falling of the south wall of the distillery which caused the accident occurred while the said work was in progress. At the time of the accident the deceased had been engaged for several days in removing the junk from the burnt building.

[1] From the facts it is clear that the deceased, as readily as the defendants or any other person, by the exercise of his faculties of sight and judgment, in an ordinarily diligent manner, could have observed and known of the danger to life and limb attending employment in and about the unsupported walls of the burnt building, where, at the time of the accident, he was employed. Indeed, no one but a person entirely bereft of all common sense could fail to perceive, upon mere casual observation, the danger in large brick walls standing without any support whatever, and that it would be necessary for one employed about them as the deceased was to exercise proper care for his own safety as against the contingency of their falling or toppling over while he was so employed. It is, therefore, very plain that the deceased, in taking and entering upon the employment while in the prosecution of which he suffered injury, himself assumed the risk of the employment. The case was not one in which the defendants, if at all liable, were required to instruct or warn the deceased

of the danger of the employment to which he had been assigned.

[2]    The law casts upon an employer the duty of warning or instructing his employees of the danger of the employment to which he assigns them only when such danger is concealed or hidden or where inexperienced youths or persons are assigned to employment on, in, or about complicated and naturally dangerous machinery or mechanical contrivances. Where, as here, though, the danger attending the employment is obvious and apparent, no duty to warn or admonish employees of such danger is imposed upon the employer. (See 20 Am. & Eng. Ency. of Law, p. 94, and cases cited.) Labatt, in his work on Master and Servant, volume 1, page 522, states the rule as follows: "The failure to give instructions is not culpable when the servant might, by the exercise of ordinary care and attention, have known of the danger, or as the rule is also expressed, where he had all the means necessary for ascertaining the actual conditions, and there was no concealed danger which could not be discovered."

[3]    It is true that the rule is that the master is compelled to provide for his servant a place in which to work, not absolutely safe, which is often an impossibility, but as safe as he can make it under the circumstances, and when the master has used the usual or requisite precautions to that end, his duty to his servants in that respect has been performed. On the other hand, "the law demands that one who is working in a place where he is exposed to danger shall himself exercise his faculties for his own protection and does not permit a recovery for damages resulting from neglect of this rule." (*Kenna* v. *Central Pac. R. R. Co.*, 101 Cal. 29, [35 Pac. 333]; *Brett* v. *Frank & Co.*, 153 Cal. 272, [94 Pac. 1051]; *Mugford* v. *Atlantic etc. Co.*, 7 Cal. App. 678, [95 Pac. 674].) Labatt, volume 1, section 332, states the rule as follows: "A servant is not in the exercise of ordinary care unless, at each stage of his work, he makes an effective use of his bodily and mental faculties, and observes as attentively as is reasonably possible under the circumstances the condition of the instrumentalities by which his safety may be affected, and the results of their operation by himself or others, in so far as that operation may tend to subject him to danger."

[4]    Thus far we have considered the case upon the theory that the defendants were the employers of the deceased

or legally sustained that relation toward the deceased. We are, however, clearly of the opinion that Buckley & Brownstone, by whom the deceased was employed, were independent contractors. By their contract with the defendants they agreed, among other things, to remove the junk and debris from the burnt premises. Under the contract, they not only were entitled to, and were given, possession of the premises pending the completion of the contract, but had full, unrestricted, and unqualified control over the manner in which, or the means by which, the work of removing the junk was to be done. The defendants had no authority to say or direct how the work should be performed or the mode of doing the work contracted for. "The chief consideration which determines one to be an independent contractor is the fact that the employer has no right of control as to the mode of doing the work contracted for." (*Green* v. *Soule,* 145 Cal. 96, 99, [78 Pac. 337, 338] ; 16 Am. & Eng. Ency. of Law, 2d ed., p. 187 ; *Buckingham* v. *Commary-Peterson Co.,* 39 Cal. App. 154, [178 Pac. 318, 325].) [5] "An independent contractor is one who, in rendering services, exercises an independent employment or occupation, and represents his employer only as to the results of his work, and not as to the means whereby it is to be accomplished." (*Green* v. *Soule,'supra.*)

The extent of the interest of the defendants here in the work which Buckley & Brownstone contracted to perform for them was in having the junk and debris removed from the destroyed buildings. They were not at all interested in how that work was to be done or accomplished by the parties who had undertaken it. As before stated, the means that the latter might employ to carry out their contract constituted a matter of utter indifference to the defendants—indeed, a matter with which they had no authority or right to interfere, unless the means adopted for that purpose were such as might result in the destruction of other property of the defendants.

[6] It results that the defendants could in no event be held liable for any negligence of which the contractors might have been guilty in prosecuting the work under their contract and which negligence might have been the direct cause of injury or damage to a third person or an employee. Of course, while, as the learned trial judge in his written opinion declared, a party has the right to use his own property in any way he sees fit, and the further right, if he desires,

to maintain dangerous structures thereon, he must not maintain anything on his property in the nature of a trap which would injure people who are there by his invitation, "or, as the decisions express it, he is not to permit unseen dangers to those who have a right to visit his premises either upon his invitation or on business." [7] And, if this was a case where there existed a latent or hidden defect in the walls fraught with danger to those working or being about and near the walls, or a dangerous defect other than that which was obvious to any person of common intelligence or sense, and of which defect the defendants had knowledge but of which neither the contractors nor the deceased were aware at the time they entered upon the work of removing the junk and debris from the premises, it would undoubtedly have been the duty of the defendants to warn the contractors or the deceased of the added danger following from such latent defect, and failure on their part to do so in such case might justly subject them to liability for any damage resulting from such defect. But, as shown, the record here discloses no such case.

[8] For the reason that Buckley & Brownstone were independent contractors, and at the time of the accident had exclusive control of the thing causing it, the rule of *res ipsa loquitur*, which counsel for the appellants undertake to invoke in this case, does not apply. That rule, often stated in the decisions, may well be repeated here, viz.: "Where defendant owes to plaintiff the duty to use care, and the thing causing the accident is shown to be under the management of defendant or his servants, and the accident is such that in the ordinary course of things does not occur, if those who have the management or control use proper care, the happening of the accident, in the absence of evidence to the contrary, is evidence that it arose from the lack of requisite care." (29 Cyc. 591.) The maxim merely means that when the conditions arise and exist, as indicated in the definition thereof, the burden is cast upon the defendant to explain how the accident happened, and, if he fails to do so, it must be accepted as an established fact that the accident was due to want of proper care on the part of the defendant. And it has been said that "the maxim is in part based upon the consideration that, where the management and control of the thing which has produced the injury is *exclusively* vested in the defendant, it is within his power to produce evidence of the actual cause

that produced the accident which the plaintiff is unable to present." (29 Cyc. 591; *Griffen* v. *Manice,* 166 N. Y. 193, 194, [82 Am. St. Rep. 630, 52 L. R. A. 922, 59 N. E. 925].)

[9]  Thus it is very manifest that the rule or maxim of *res ipsa loquitur* is never applicable where the thing causing the accident is not under the exclusive control or management of the defendant or the party whose negligence it is charged is the efficient or proximate cause of the accident or his servants.  There are many California cases so declaring and a few of them may here be named, viz.: *Judson* v. *Giant Powder Co.,* 107 Cal. 556, [48 Am. St. Rep. 146, 29 L. R. A. 718, 40 Pac. 1020]; *Kahn* v. *Triest-Rosenberg Cap Co.,* 139 Cal. 344, [73 Pac. 164]; *White* v. *Spreckels,* 10 Cal. App. 287, [101 Pac. 920].

In the case at bar the evidence, as shown, discloses that Buckley & Brownstone, the contractors, and not the defendants, had control of the premises or the thing that caused the accident at the time of the accident.  To them (the contractors) the burnt premises were turned over for the purpose of enabling them to perform the terms of the contract, and for that purpose they were in their possession and under their exclusive control for and during the time requisite for the completion of the contract.

It follows that, if the defendants could under any view of the case be held liable for the accident and the death as a result thereof of the deceased, it was incumbent upon the plaintiffs to show that the accident was directly due to the negligence of the defendants.  This burden they failed to sustain. Indeed, the circumstances, though very meager in a disclosure of the cause of the falling of the wall, tend to show, if anything at all in that particular, that it was occasioned by or through some act or acts of the employees occurring while they were engaged in removing the junk and debris from the premises.  But, however that may be, we are firmly of the opinion that the evidence presented by the plaintiffs utterly failed to show that the defendants were in any sense or measure legally responsible for the unfortunate accident.

The judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.