[Civ. No. 7073. First Appellate District, Division Two.—July 25, 1930.]

SOL SLYTER, an Incompetent Person, etc., Respondent, v. CLINTON CONSTRUCTION COMPANY (a Corporation), Appellant.

Cooley, Crowley & Gallagher and Cooley & Crowley for Appellant.

James F. Brennan and P. J. Murphy for Respondent.

PRESTON (H. L.), J., *pro tem.*—This is an appeal by the defendant Clinton Construction Company of California, a corporation, from a judgment entered against it upon a verdict of a jury in the sum of $15,000.

Sol Slyter brought this action through his guardian, charging that he was severely injured by the falling of a scaffold, upon which he was working as a plasterer, and that said scaffold fell by reason of the negligence of the defendant and appellant corporation.

The facts necessary for a correct understanding of the questions involved on this appeal, and which are practically uncontradicted, may be thus briefly stated: The accident occurred during the construction of a building in San Francisco, California, known as the "Relief Home." Appellant Clinton Construction Company was the general contractor for the erection of said building and A. Knowles was the subcontractor for the plastering work. Plaintiff Sol Slyter was employed by Knowles. Knowles made a contract with the defendant Parrott & Company, a corporation, whereby the latter furnished a patent scaffold for the use of

Knowles' workmen. The architect's plans called for a main building and seven ward annexes, lettered A, B, C, D, E, F and G. Bids were invited by the city and county of San Francisco from contractors upon several propositions. Appellant secured the contract under its bid on proposition No. 3. This proposition excluded the erection of "Ward F," except that the concrete walls thereof were to be built out "North from the center line of the north concrete wall of the main connecting corridor for a distance of 6 feet and 2 inches." The architect's plans further provided: "All horizontal steel bars shall project from this cut off line north for a distance equal to 50 diameters of the section of the bars. New ward building 'F' shall be closed in on north cut off side by a thirteen inch thick solid brick wall of common brick. . . . Brick wall shall have its north face 6 feet 2 inches north of center wall of main connecting corridor, and shall extend from level of adjacent concrete footings at end of brick wall to the under side of the roof slab."

All of the permanent walls of the building were to be of reinforced concrete.

It must be remembered that the contract required the construction of this brick wall only "up to the under side of the roof slab." The general contract was entered into on October 1, 1924. The plans, under the general contract, called for an eight-inch reinforced concrete fire-wall, extending three feet six inches above "the concrete roof slab on all permanent walls of the building."

As above noted, the general contract also called for the temporary brick wall up to the roof on the north end of "Ward F." After the completion of the erection of the concrete structure of the building, there was left, unprovided for, an opening in the fire-wall—in other words, the general contract made no provision for a fire-wall to be erected on "the roof slab" directly over this temporary brick wall. Thereafter, and in October, 1926, the city architect, upon authority of the board of public works gave appellant Clinton Construction Company an oral order to construct a brick wall three and one-half feet high to fill in this gap. This work was not provided for or done under the original contract, but was a separate contract, and the

work was accepted and fully paid for in October, 1926—two months before the injury to plaintiff.

Parrott & Company, a corporation, who was also made a defendant, but no judgment was entered against it, or one of the hodcarriers, hung the scaffold from this brick fire-wall by means of hooks. While several plasterers, including plaintiff, who were in the employ of Knowles, the subcontractor, were working upon this scaffold, and about an hour after they had started working upon it, this brick fire-wall gave way, the scaffold fell to the ground and plaintiff was severely injured.

The amended complaint, upon which the case went to trial, alleges, in substance, that appellant was the general contractor for the erection of the building; that plaintiff was employed as a plasterer by an independent subcontractor; that plaintiff's employer hung a scaffold from a brick fire-wall theretofore erected by appellant, and that while plaintiff was working on said scaffold the fire-wall collapsed, thereby precipitating plaintiff to the ground.

The plaintiff further alleges: ''That said defendant (appellant herein) Clinton Construction Company negligently and improperly constructed said wall,'' and also alleges ''That said Clinton Construction Company knew, or by the exercise of ordinary care should have known: (1) That the wall as constructed was unsafe upon which to hang scaffolding for use in plastering said wall; (2) That A. Knowles was hanging scaffolding from the walls for the purpose of, and was doing the plastering at said Relief Home; (3) That scaffolding was, prior to the accident hereinafter referred to, hung upon said wall for use in plastering same by the employees of A. Knowles, of whom plaintiff was one; (4) That the thickness of said wall was not discernible to a person situated as was plaintiff; that notwithstanding the aforesaid construction and knowledge herein in this paragraph set forth, said defendant Clinton Construction Company negligently failed to give any warning whatsoever to or for plaintiff, either of the thickness of said wall or the danger of the hanging and use of scaffolding thereon, and plaintiff did not know of said thickness or danger.''

Appellant first contends that it owed to plaintiff no legal duty, service or obligation in respect to the matters above alleged.

The law is well settled that in order to maintain an action of this character it must be made to appear that appellant owed some duty or obligation to plaintiff which it failed to discharge or perform. Unless there is some contract, duty or service which a party is bound to fulfill, there can be no negligence, fault or breach of obligation. (*Rider* v. *Clark*, 132 Cal. 387 [64 Pac. 564].) An independent contractor is one who, in rendering services, exercises an independent employment or occupation and represents his employer only as to the results of his work and not as to the means whereby it is to be accomplished. (*Green* v. *Soule,* 145 Cal. 96 [78 Pac. 337]; *Brown* v. *Board of Trustees,* 41 Cal. App. 100–108 [182 Pac. 316]; *George* v. *Trinity Church,* 176 Cal. 553 [169 Pac. 69]; 16 Am. & Eng. Ency. of Law, 2d ed., p. 187; *Buckingham* v. *Commary-Peterson Co.,* 39 Cal. App. 154 [178 Pac. 318]; *Moody* v. *Industrial Acc. Com.,* 204 Cal. 670 [60 A. L. R. 299, 269 Pac. 542]; *Brown* v. *Industrial Acc. Com.,* 174 Cal. 457 [163 Pac. 664]; *Barton* v. *Studebaker Corp., etc.,* 46 Cal. App. 707 [189 Pac. 1025]; *North Bend Lumber Co.* v. *Chicago R. R. Co.,* 76 Wash. 232–242 [135 Pac. 1017]; *Curran* v. *Earle C. Anthony, Inc.,* 77 Cal. App. 465 [247 Pac. 236]; *Charles R. McCormick Lbr. Co.* v. *O'Brien,* 90 Cal. App. 776–780 [266 Pac. 594]; *Western Metal Supply Co.* v. *Pillsbury,* 172 Cal. 407 [Ann. Cas. 1917E, 390, 156 Pac. 491]; *Press Pub. Co.* v. *Industrial Acc. Com.,* 190 Cal. 114 [210 Pac. 820]; *May* v. *Farrell,* 94 Cal. App. 705–710 [271 Pac. 789] *McIntyre* v. *Hicks,* 100 Cal. App. 531 [280 Pac. 543].)

The foregoing authorities also hold that the chief consideration which determines one to be an independent contractor is the fact that the employer has no right to control as to the mode of doing the work contracted for.

Under the evidence in this case, there can be no doubt but that Knowles occupied the relation of independent contractor to appellant; he exercised an independent occupation; his contract required him to bring about the result of plastering the walls and he was left entirely free

to select for himself the means and mode of doing the work and the persons to be immediately employed therein, without any controd or right of control in the appellant Clinton Construction Company, and appellant had given no instructions as to the means to be used in accomplishing the work.

Under Knowles' subcontract he not only had possession of the premises pending the completion of the plastering, but had further and unrestricted, and unqualified control, over the manner in which he should hang the scaffolding in order to do the plastering, and also over the means by which the work was to be done. The appellant had no authority to say or direct how the scaffolding should be anchored or the work performed, or the mode of doing the work contracted for. The extent of appellant's interest in the work to be performed by Knowles was in having the plastering of the walls done according to the contract. Appellant was not at all interested in how the scaffolding should be placed on the walls by the employees of Knowles, and had not given Knowles or his employees any direction as to how the scaffolding should be anchored or the work done. Under these circumstances it results that appellant could in no event be held liable for any negligence of which Knowles might have been guilty in prosecuting the work under his contract, which negligence may have been the direct cause of the injury to his employee Slyter.

In *George* v. *Trinity Church,* 176 Cal. 553 [169 Pac. 69], a completed pole scaffold was furnished by the contractor for the use of the plastering subcontractor. Thereafter some person unknown removed one of the supports and an employee of the subcontractor was injured. It was held that there was no duty resting upon the general contractor to see that the scaffold was kept in repair.

Appellant further contends that the plaintiff was using the fire-wall for a purpose for which it was not intended and, therefore, cannot complain of the resulting injury. We think this contention must be sustained also.

The law is well settled that a contractor is not liable for damages resulting from the misuse and uninvited use of any portion of a building under construction by him. (*Fountain* v. *Willard-Slater Co.,* 172 Cal. 131 [155 Pac. 630]; *Fanjoy* v. *Seales,* 29 Cal. 244; *Fay* v. *Ger-*

*man General Benevolent Society,* 163 Cal. 118–121 [124 Pac. 844]; *Litch* v. *White,* 160 Cal. 497 [117 Pac. 515]; *Shellman* v. *Hershey,* 31 Cal. App. 652 [161 Pac. 132].)

 From the facts it is clear that the plaintiff, as readily as the appellant, or any other person, by the exercise of his faculties of sight and judgment in an ordinarily diligent manner, could have observed and known of the danger attending the hanging of heavy scaffolding over an eight-inch fire-wall such as involved in this action. Indeed, no one but a person entirely bereft of all common sense could have failed to perceive, upon mere casual observation, the danger of using scaffolding so hung upon which to work. It is, therefore, plain that plaintiff, in entering upon the employment under such conditions, while in the prosecution of which he suffered injury, himself assumed the risk of the employment. It is not a case in which even Knowles, much less appellant, was required to instruct or warn plaintiff of the danger of working on the scaffolding hung on such a flimsy structure. *The law would cast upon Knowles, in the case at bar, the duty of warning or instructing his employees of the danger of the employment to which he assigns them, only when such danger is concealed or hidden or where inexperienced youths or persons are assigned to employment on, in or about complicated and naturally dangerous machinery or mechanical contrivances.* Where, as here, the danger attending the using of the scaffolding so anchored was so obvious and apparent to any casual observer, certainly there was no duty cast upon appellant to warn or admonish the employees of Knowles, an independent subcontractor, that it was dangerous to use the fire-wall upon which to anchor the scaffolding. Furthermore, the temporary fire-wall was built for the purpose of fire resistance, and not as a support for the hanging of heavy scaffolding thereon.

We deem a further discussion of this case entirely unnecessary. We find no legal basis upon which the judgment can be sustained.

The judgment is, therefore, reversed.

Sturtevant, J., and Nourse, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 22, 1930, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 23, 1930.