[Civ. No. 16900.   First Dist., Div. One.   Oct. 25, 1956.]

GAIL THERESA GARDNER, a Minor, etc., et al., Appellants, v. THE STONESTOWN CORPORATION (a Corporation) et al., Respondents.

Low & Duryea and James J. Duryea for Appellants.

Keith, Creede & Sedgwick, Hadsell, Murman & Bishop, Pelton, Gunther, Durney & Gudmundson, Dion R. Holm, City Attorney (San Francisco), and George E. Baglin, Deputy City Attorney, for Respondents.

BRAY, J.—Plaintiffs' appeal, after motion for new trial denied, from judgments of nonsuit entered in favor of all defendants, raises the question of whether there was any evidence which would have supported a verdict in plaintiffs' favor against any one or all of the defendants, had the case gone to the jury.

### GENERAL FACTS

The facts referring to the negligence of the particular defendants will be discussed later. As we are required to do

in nonsuits, the facts and the reasonable inferences therefrom most strongly in favor of plaintiffs will be given.

Plaintiff Gail, 9 years of age, lived with her mother in an apartment leased from defendant Stonestown Corporation (hereafter referred to as "Stonestown"). Adjacent to the property upon which the Stonestown apartment building sat is a lot owned by the defendant city and county of San Francisco (hereafter referred to as "San Francisco"). San Francisco had entered into a contract with defendant Ira H. Larson Company (hereafter referred to as "contractor") by which the latter was to construct a fire house on San Francisco's lot. Contractor had sublet to Associated Plastering and Lathing Company (hereafter referred to as "plasterer") the plastering work on the fire house. During the construction of the fire house contractor had built a wall 3 feet 6 inches high, along and one inch from the line dividing the fire house property from the Stonestown property. Separating this wall from the apartment building was an area 25 feet in width and consisting of lawn and a cement apron which led to the back door of the apartment building. This area was owned and maintained by Stonestown and was commonly used as a play area by the children living in the apartment building. When the fire house was substantially constructed contractor called on plasterer to perform its contract. This required plastering work to be done both inside and outside the fire house. Because water was available only at the front of the building, the plaster was mixed there and trundled in wheelbarrows to the point of application. The plastering on all of the exterior except the rear wall was completed without difficulty. However, to plaster that wall it became necessary to build a ramp over the above mentioned line wall for the wheelbarrows to run over. This ramp was built by plasterer and was about 25 feet long, rising from ground level to a height of approximately 4½ feet at the upper end. It was made of 4 inch by 4 inch wooden uprights with crossbars nailed across them supporting three 2 inch by 8 inch planks abreast. The planks were lying loose on the crossbars. The tops of the upright stakes were rough and jagged as if driven into the ground by the blunt end of an ax. The planks which formed the walkway of the ramp were of rough lumber, and were grooved so as to present an irregular surface. They were covered with plaster and paint. The low end of the ramp started at or on the cement apron which extended out from the apartment house

toward the wall, and ran almost parallel to the wall toward the fire house patio at the rear of the building. At the top of the wall there was a platform about the same size as the ramp.

On March 15, 1953, Gail, her sister, and another child were playing mud pies near the ramp. There were some other children on top of the ramp fighting over a wire. Gail went up the ramp, took the wire from them and threw it on the ground. As she walked back down the ramp she got her foot caught in the space between the planks and fell. She may have been walking backwards down the ramp. Gail did not remember what happened next, but her mother heard her screams and took her in the apartment where she wiped off the blood and noticed that six permanent teeth had been knocked out. Gail had several bruises on her body, and her face was discolored and bruised around her mouth. Apparently, when Gail fell, she had struck her mouth on one of the 4 inch by 4 inch uprights of the ramp. The ramp was constructed on Stonestown property without permission of Stonestown.

The court granted nonsuits as to all defendants.

### San Francisco

We fail to find any evidence that would support a verdict of liability on the part of San Francisco. Plaintiffs do not point to any evidence of negligence on its part, and at argument practically conceded that they had failed to make out a case against San Francisco. ■ The mere relationship of owner and independent contractor does not make the owner liable for the independent contractor's negligent acts in performing the details of the work contracted for. (*McDonald v. Shell Oil Co.*, 44 Cal.2d 785, 788 [285 P.2d 902] ; *Barrabee v. Crescenta Mutual Water Co.,* 88 Cal.App.2d 192, 196 [198 P.2d 558].)

### Stonestown

■ As before stated, the area upon which the ramp was constructed was commonly used by the apartment building children for play, a fact well known to Stonestown employees. There was testimony that during the five days to a week that the ramp was there before the accident, its presence and the children playing in the area was observed by Stonestown employees. One Suojanen, a Stonestown tenant, complained on one occasion to Stonestown about the ramp and about children taking boards from it and an employee

came to look at it. Thus, there was evidence from which the jury could have found that Stonestown, from the time of its construction, knew of the presence of the ramp in the area where it permitted children to play, even though it had not formally consented to its construction. Moreover, the jury could have found that Stonestown knew or should have known of the character of the ramp's construction and that children would and did play upon it. Such findings would be sufficient to place liability upon Stonestown for the accident, upon the principle that the children were, in effect, invitees of Stonestown on the play area, and therefore Stonestown was required to use ordinary care for their safety. Such care would not be met by permitting in the area a ramp which would attract children and which ramp was unsafe for them. Permitting a ramp with loose boards where it was reasonable to assume that children would go could be held to be lack of ordinary care. We are not dealing with the "attractive nuisance" principle. All the parties agree that that principle is not applicable here. The principle applicable here is that set forth in *Roberts* v. *Del Monte Properties Co.*, 111 Cal.App.2d 69, 74 [243 P.2d 914]. There a minor, living with his parents in the defendant's hotel, saw a pile of mattresses on the floor in the hall. While playing on the top mattress he accidentally tumbled backwards towards an open window behind the pile. The window screen gave way and the child fell down into a patio, receiving injuries. As does Stonestown here concerning Gail's going on the ramp,* the defendant contended that the minor when playing on the mattress pile was using it for an unintended and unpermitted purpose, and therefore became a trespasser or licensee to whom the defendant owed no duty except to refrain from overt or intentional acts. The reviewing court said (p. 73) : "This rule has expressly been held inapplicable to infant invitees attracted by dangerous objects in *Crane* v. *Smith,* 23 Cal.2d 288, 300 [144 P.2d 356]." It then said that to say that a child attracted by a dangerous object in a place where it was an invitee became a trespasser as to such object " '. . . would be to extend the doctrine of the cases denying compensation to one who has exceeded the scope of his invitation beyond their logical scope. Moreover, such reasoning would nullify the land occupier's duty to keep his premises free of natural or artificial conditions which in-

---

*The other defendants make the same contention.

volve an unreasonable danger to his business visitors when he has reason to believe that they will not realize the risk involved in the condition. Certainly, evidence shown by the present record justifies a finding that the child's act was one which a reasonably prudent person should have anticipated and guarded against.' And further on page 301: 'The childish propensity to intermeddle was the characteristic which the appellant should have taken reasonable precautions to guard against.' '' (Pp. 73-74, quoting from *Crane* v. *Smith*, 23 Cal.2d 288 [144 P.2d 356].) The court said also that decisions providing liability in such situations ''are based on the general principle that the person in possession of premises must take such precautions for the safety of his business invitees as are reasonable under all the circumstances, considering their relation, the burden of the interference with his own affairs and the danger to the invitees to be anticipated, and that special caution is required in behalf of invitees of immature age whose inability to appreciate and propensity to ignore certain dangers he ought to consider. . . . In each case the reasonableness of the conduct under all the circumstances is for the jury and accordingly it was also in this case correctly left to the jury.'' (P. 74.)

In our case no contention is made that apart from the use of the ramp Gail was not a business invitee of Stonestown on the premises. In *Crane* v. *Smith, supra,* 23 Cal.2d 288, where a minor accompanied her mother into the defendant's store and was injured while meddling with a coffee mill, the court, although holding that the mill was attractive to the child, pointed out that the recovery was not had under the attractive nuisance doctrine, but on the theory that the child was an invitee to whom the store owner owed the duty of ordinary care, and that indulging in the childish propensity to intermeddle is a characteristic which the store owner should have taken reasonable precautions to guard against. So here, Gail was an invitee of Stonestown to the premises upon which it knew the ramp existed. The defendant should have known also of the childish propensity to climb upon a ramp and should have taken reasonable precautions to guard against Gail's injury therefrom, even though the ramp was constructed by another than Stonestown.

Stonestown contends that there is no evidence that it had notice of the dangerous condition of the ramp nor of how long that condition existed. The evidence shows that the ramp was built with loose flooring. Gail's injury was caused

by her getting her foot caught between two loose boards. While it is possible that the cracks between the loose boards may have varied in size from time to time, there is no contention that the boards were ever nailed. Thus, a reasonable inference is that the dangerous condition existed for the five days to a week that the ramp was there. Stonestown, knowing of the presence of the ramp in an area where it knew that children played, was under a duty to see that the ramp was reasonably safe, as it is presumed to know that children would play there. ''A possessor of land, who leases a part thereof and retains in his own possession any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sub-lessee for bodily harm caused to them by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe.'' (Rest., Torts, § 360.)

### PLASTERER

■ What we have said concerning the liability of Stonestown applies likewise to plasterer who constructed the ramp on premises where Gail was entitled to be. The jury could have found from the evidence that plasterer knew or should have known that the children were playing in the area where it built the ramp. The fact that plasterer, having constructed the ramp without permission, was a trespasser upon those premises, did not make Gail in using the ramp a trespasser. Plasterer, in placing an attractively dangerous object on the place where Gail had a right to be, was required to use ordinary care to protect the child from injury from the object with which plasterer reasonably should have known Gail would meddle.

### CONTRACTOR

As early as *Boswell* v. *Laird,* 8 Cal. 469 [68 Am.Dec. 345], it was held that, generally speaking, the rule of *respondeat superior* does not apply to cases in which injury results from the negligent acts of an independent contractor. This rule has continued. See *Luce* v. *Holloway,* 156 Cal. 162, 163 [103 P. 886]; *George* v. *Trinity Church,* 176 Cal. 553, 556 [169 P. 69] (injury due to negligence of cement and stone subcontractor. The court held that the general contractor has

no duty to inspect a scaffold built by the subcontractor); *Green* v. *Soule,* 145 Cal. 96, 98-100 [78 P. 337] (negligence of plastering subcontractor); *Hard* v. *Hollywood Turf Club,* 112 Cal.App.2d 263, 274-275 [246 P.2d 716] (negligence of painting subcontractor); *Slyter* v. ˙*Clinton Const. Co.,* 107 Cal.App. 348, 353 [290 P. 643] (negligence of plastering subcontractor).

Plaintiffs contend that the following evidence takes the case out of the rule. Contractor's foreman testified: ''My job for the general contractor is to see that everything is kept clear around that building as far as possible, and see that the work is done right, so naturally I would be all around the building.'' He also testified that he saw the ramp immediately after it was constructed but did not go on it, and that almost every night for five nights during the time the ramp was there, he stayed on the job until about 9 o'clock p. m. to keep children from tracking on fresh cement. Gail testified that before the accident she had seen a one-armed colored man walk up and down the ramp. Contractor's foreman testified that he employed a one-armed watchman but not until after the accident. The jury, of course, could have resolved this conflict. ██ Thus, a reasonable inference could be drawn that both the foreman and the watchman having seen the ramp, knew or must have known of its negligent construction. From all this evidence, a jury could, although not required so to do, have found that contractor knew of the danger to the children playing, and who had a right to play in the ramp area. Such a finding would bring the case within the exception to the general rule, namely, ''An independent general contractor, who is present and sees and realizes that a subcontractor is doing his work in an unlawful and dangerous manner, may be liable for an injury resulting directly to a third person from such unlawful and negligent conduct.'' (*Rosenburg* v. *Schwartz,* (1932), 260 N.Y. 162 [183 N.E. 282, 283].) In that case the general contractor engaged in building a church sublet the brick work to brick masons. The latter built a scaffold on the outside of the wall on one side of the church, which scaffold extended 25 feet above and 4 or 5 feet beyond the lot line between the church and property upon which the plaintiff, 12 years of age, lived. The plaintiff and another boy were standing on this property under the scaffold watching the work going on in and about the church building. Because of lack of suitable rails or screens on the scaffold,

a brick fell or was knocked off the scaffold, injuring the plaintiff. As in our case the general contractor contended that he was under no duty to guard the scaffold and hence should not be held liable. The reviewing court reversed a judgment of nonsuit, pointing out, in effect, that it was a question for the jury whether the quoted exception to the general rule of lack of liability applied. The above quotation was quoted with approval in *Schwartz* v. *Merola Bros. Const. Corp.* (1943), 290 N.Y. 145 [48 N.E.2d 299, 302].

While we have been unable to find in California a case applying the above mentioned exception to the general rule, there are cases here holding that such exception applies where the acts of the subcontractor create a public nuisance and are known to the general contractor. (See *MacLean* v. *City & County of San Francisco*, 127 Cal.App.2d 263 [273 P.2d 698].) Logically there is no difference between a situation created by a subcontractor known to the general contractor and dangerous to third persons, which amounts to a public nuisance, and a similar situation which, while dangerous to third persons, does not amount to a public nuisance.

■ There is another exception to the general rule which the evidence might have justified the jury in applying. This exception is expressed in *Williams* v. *Fresno C. & I. Co.*, 96 Cal. 14, 16 [30 P. 961, 31 Am.St.Rep. 172], quoting from *Boswell* v. *Laird, supra*, 8 Cal. 469: " 'If the mode and manner which constituted the defect by which the injuries complained of were occasioned had been *inherent in the plan*, and this plan had been devised by Laird and Chambers, which the contractors were engaged to carry out, then liability would attach to Laird and Chambers.' "

■ In our case the contractor had the right and the responsibility of notifying the subcontractor when the latter's work should and could be done. There was evidence that at the time contractor notified plasterer to proceed, certain work was going on inside the fire house building which prevented plasterer from moving materials through the building and required the construction of the ramp upon the adjoining property. Thus, by requiring plasterer to proceed at that time, contractor, in effect, was requiring plasterer to use the adjoining property and thus was dealing with the mode and manner of subcontractor doing the work. Such fact would bring contractor within the exception above mentioned.

### GAIL'S STATUS

Stonestown says that, while it probably invited Gail to play in the area, it did not invite her to use the ramp. Contractor and plasterer say, nor did we invite her to use the ramp. However, as pointed out in *Crane* v. *Smith, supra,* 23 Cal.2d 288, and *Roberts* v. *Del Monte Properties Co., supra,* 111 Cal.App.2d 69, Stonestown in permitting to be placed in the area to which they had invited Gail, a ramp which was reasonably inviting to children, cannot now claim that it was not required to use reasonable precautions to guard against a child's "propensity to intermeddle." As to the other defendants, in placing and maintaining a structure inviting to children in their play area, they, too, would be responsible for not taking reasonable precautions to protect her.

Both Gail and her mother testified that she was told not to go on the ramp. At the time of the accident there were two children on the ramp fighting over a wire. Gail went on the ramp to take the wire away from them to stop the fighting. It was as she was returning from doing this that she caught her foot between the loose boards and was injured. We cannot say as a matter of law that the warning changed her status. It was for the jury to determine as a matter of fact the effect of the warning. A 9-year-old child cannot be held to the same standards of conduct as an adult. Nor is the rule stated in *Nagle* v. *City of Long Beach,* 113 Cal.App.2d 669, 672 [248 P.2d 799], and *Allen* v. *Jim Ruby Const. Co.,* 138 Cal.App.2d 428 [291 P.2d 991], cited by Stonestown, concerning obvious dangers, necessarily applicable to a child. It was for the jury to determine whether a child would realize the danger of walking on loose boards. As said in *Roberts* v. *Del Monte Properties Co., supra,* 111 Cal.App.2d 69, 74: "In each case the reasonableness of the conduct under all the circumstances is for the jury and accordingly it was also in this case correctly left to the jury."

Judgment in favor of city and county of San Francisco affirmed. Judgments in favor of Ira H. Larson Company, Associated Plastering and Lathing Company, and The Stonestown Corporation, reversed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied November 23, 1956,

and the petitions of respondents Stonestown Corp., Associated Plastering & Lathing Co., and Ira H. Larson Co. for a hearing by the Supreme Court were denied December 19, 1956.