FRANK GORDON, ET AL V. RUSSELL H. MATSON, JR., ET AL

5-4646                                                      439 S.W. 2d 627

Opinion Delivered April 1, 1969
[Rehearing denied May 12, 1969.]

*Travis Mathis* and *McMillan, McMillan & Turner* for appellants.

*Wright, Lindsey & Jennings* for appellees.

WILLIAM S. ARNOLD, Special Justice. This case comes on appeal from an order of the circuit court granting summary judgment to the appellee pursuant to a motion for summary judgment filed.

The complaint was filed in November 1965 and amended in March 1966. The original defendant, Matson, filed a general denial and the intervenor, Travelers Insurance Company, filed motion to make more definite and certain.

The defendant responded to the intervention and propounded interrogatories to which Travelers responded. The plaintiff also propounded interrogatories to which responses were made and the defendant interrogated the plaintiff and the complaint was again amended, this last amendment setting forth certain specific allegations of alleged noncompliance by the defendant with provisions of Act No. 161 of 1937 and the Safety Code promulgated pursuant to the Act.

A pretrial order was entered by the trial court, which order found that certain facts were undisputed and set forth the claims of the parties and enumerated the legal issues and fact issues, this order being entered July 11, 1967.

Subsequent to entry of the pretrial order the defendant moved for a summary judgment and the plaintiff and intervenor responded denying that there was no genuine issue as to material fact. On September 21, 1967, the trial court entered its order granting the motion for summary judgment from which comes this appeal.

The undisputed facts, as found in the pretrial order, indicate that the defendant, Matson, contracted with Trustees of Henderson State College to construct a

building and subcontracted to Cook & Sons (whose Workmen's Compensation Carrier is the intervenor, Travelers) the masonry work and the plaintiff, Gordon, was an employee of Cook and injured in the scope of his employment on August 22, 1963, while engaged in removing materials in a buggy from the floor of a portable hoist device known as a "lad-E-vator" owned, maintained, erected, positioned and operated by Cook. The exhibits include the prime contract to Matson and subcontract with Cook. The prime contract is in AIA standard form and contains provisions regarding compliance with safety codes. The subcontract obligates the subcontractor to discharge the provisions of the prime contract as it relates to the work of the subcontractor.

The amended complaint alleges that the defendant, Matson, was obligated to provide to employees of Cook a safe place to work and to respond in damages if, as is alleged, there was noncompliance with the provisions of the Safety Code promulgated under Arkansas Statutes 81-101 on theory that responsibility ultimately rests on the prime contractor for assuring compliance with the Code by subcontractors in order to satisfy the obligation of the prime contractor to provide a safe place to work and further alleges that this responsibility included providing stationary platform, toe boards and guard rails and that these safety devices did not exist at the place of employment of the plaintiff and that his injuries resulted from their absence, or would not have occurred had they been present. Specifically it is also alleged that the space between the building under construction and the elevator hoist was spanned by a removable plyboard slab and the absence of a fixed, stationery platform at this construction level was the responsibility of the defendant, Matson, and that its absence caused or contributed to cause the injuries.

The undisputed facts as shown by the pretrial order are to the effect that the plaintiff, employee of the sub-

contractor, sustained injuries in a fall from the third floor level, that the space between the construction and the hoist was bridged by a plywood board and that the hoist had been located and was under the exclusive control of the subcontractor in its operation and had been provided by him. It is conceded that the prime contractor did not exercise any supervision or control of any of these activities by the subcontractor or his employees.

We are therefore forced to the conclusion that unless the trial court has erred in its legal conclusion based upon the undisputed facts established by the pretrial order then the order granting summary judgment must be affirmed. *Epps* v. *Remmel* 237 Ark. 391, 373 S.W. 2d 141; *Jones* v. *Comer*, 237 Ark. 500, 374 S.W. 2d 465.

It appears to be the general rule that the responsibilities of the prime contractor to employees of the subcontractor on the job are comparable to the duties of the owner of the premises. This is a duty to exercise ordinary care and to warn in the event there are any unusually hazardous conditions existing which might affect the welfare of the employees. The recognized exception occurs if the prime contractor has undertaken to perform certain duties or activities and negligently fails to perform them thereafter or perform them in a negligent manner. *Aluminum Ore Co.* v. *George,* 208 Ark. 419 186 S.W. 2d 656.

Then unless the Legislative enactments, Arkansas Statutes Section 81-101 et seq or the contract with the owner create liability to the plaintiff under the particular circumstances existing here it does not appear that there is liability on the part of the prime contractor.

Section 81-120 contains provisions for penalties resulting from violation of the Act or rules issued by the Commissioner of Labor and provides for recovery of these penalties in criminal proceedings or by a civil ac-

tion brought in the name of the State. The Act being penal in nature should be strictly construed. The Act contains no language indicating any intent on the part of the Legislature to alter the existing law with respect to division of duties and responsibilities between prime and subcontractors and we therefore conclude that Section 81-101 does not arbitrarily place responsibility for compliance upon the prime contractor.

We find no basis for holding that the defendant, Matson, by contracting with the owner for construction of the improvements and to protect the owner from liability arising from the work thereby also assumed the position of an insurer of the safety of employees of a subcontractor where his own employer is legally and contractually obligated in these matters by provision of the Statute, Section 81-101, and the contract with Matson. To hold the prime contractor responsible to assure compliance by all subcontractors by actual physical inspection and direction would be to write for the parties a contract different from that into which they entered and would destroy the relationship of independent contractor existing between them.

We therefore conclude no error occurred and the judgment ought to be affirmed.

BROWN, J., disqualified.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice. I respectfully dissent because I think that the trial court and the majority have misapplied the summary judgment statute.

Summary judgments are not the favorites of the courts and in determining whether such a judgment should be granted, all pleadings must be liberally construed in favor of the party against whom the judgment would be granted. *White River Limestone Products*

*Co.* v. *Missouri-Pacific R. Co.,* 228 Ark. 697, 310 S.W. 2d 3. This extreme remedy should be granted only in the absence of any genuine issue as to any material fact. *Wirges* v. *Hawkins,* 238 Ark. 100, 378 S.W. 2d 646; *Kealy* v. *Lumbermen's Mutual Ins. Co.,* 239 Ark. 766, 394 S.W. 2d 629. The burden of demonstrating nonexistence of a genuine fact issue is upon the moving party. *Deltic Farm & Timber Co.* v. *Manning,* 239 Ark. 264, 389 S.W. 2d 435. If any vital and material fact issue is presented, a summary judgment should be refused. *Douthit* v. *Arkansas Power & Light Co.,* 240 Ark. 153, 398 S.W. 2d 521. In considering a motion for a summary judgment all reasonable inferences must be considered in the light most favorable to the party against whom the judgment would go. *Evers* v. *Guaranty Investment Co.,* 244 Ark. 925, 428 S.W. 2d 68. I submit that there is a genuine issue of fact to be determined in this case.

In order to illustrate the existence of this issue, attention must be given to a legal basis of liability urged by appellants but ignored by the majority. Appellants' argument with reference to the application of the safety code is not restricted to their contention that compliance with standards therein set out is a nondelegable duty of the general contractor. I will agree that, generally speaking, the general contractor is not the employer under those statutes, insofar as employees of a subcontractor are concerned. Appellants argue, also, that the general contractor was not at liberty to stand by with knowledge of violation of the safety code by his subcontractor and escape liability merely because the actual work was being done by an independent contractor. I submit that appellants are correct in this contention. Although I am unaware of any Arkansas decision on this point, I am convinced that the better rule is that a general contractor who knows that a subcontractor is doing his work in an unlawful and dangerous manner and fails to take any steps to remedy the situation is liable for any injury resulting directly to a third person for such unlawful and negligent conduct. See 2 Shearman Red-

field on Negligence 685, § 276; *Rosenberg* v. *Schwartz*, 260 N.Y. 162, 183 N.E. 282 (1932); *Delaney* v. *Philhern Realty Holding Corp.*, 280 N.Y. 461, 21 N.E. 2d 507 (1939); *Schwartz* v. *Merola Bros. Constr. Corp.*, 290 N.Y. 145, 48 N.E. 2d 299 (1943); *Gardner* v. *Stonestown Corp.*, 145 Cal. App. 2d 405, 302 P. 2d 674 (1956); *Waterway Terminals Co.* v. *P. S. Lord Mechanical Con.*, 242 Ore. 1, 406 P. 2d 556 (1965); *Peairs* v. *Florida Publishing Co.*, 132 So. 2d 561, (Fla. App. 1961). While some of these cases involve an owner rather than a general contractor, the principle of law applied is the same.

There is clearly an inference from the record considered by the trial court that the general contractor knew the condition which existed, or was aware that it existed, and took no steps to cause corrections to be made even though the dangerous condition was created by a failure of the subcontractor to comply with the safety code.

In order to illustrate that there is a genuine issue on this point, it is necessary to refer to the pretrial order which was the basis of the motion on which summary judgment was granted. In setting out the appellants' claim, the court stated that the appellants contended that the hoist was located at such a distance from the edge of the building that the space had to be spanned in order to permit the wheelbarrows and buggies with material to be moved from the hoist to the building; that the space was spanned with a plywood board slab which was moved back and forth from time to time; that there were no other safety devices or precautions and specifically no fixed stationary platform at the level where the deceased was working, nor were there any guardrails, scaffoldings, toeboards or anything else surrounding the hoist which would protect a person who might fall when the hoist suddenly descended. It was also stated that appellants contended that the contractor had the authority to shut down the hoist if it did not comply with the safety code. According to this

order, appellants also contended that the general contractor was negligent in permitting the subcontractor to span the space between the building and the hoist with a movable plywood board instead of a permanent stationary platform firmly fixed to the building, in permitting the subcontractor to operate the hoist at such a distance away from the building as to require that distance to be spanned and in failing to surround the hoist with scaffolding, guardrails and other safety devices which would protect a workman from falling in case the hoist descended without warning. Certain photographs were made exhibits to the pretrial order. These photographs give various views of the building under construction and the Matson hoist. If the conditions were as appellants contend, an inference might well be drawn that the subcontractor could not have utilized this hoist without the required safety appliances or equipment without the knowledge of the general contractor. In contending that the contractor *permitted* these deficiencies, the appellants necessarily contend that the contractor had knowledge thereof. One cannot permit something of which he has no knowledge.

The *Rosenberg* case is a leading case on the general contractor's liability in such circumstances. It is typical and particularly applicable here. In that case, the general contractor was building a church. He sublet the brickwork to brick masons. The brick masons were laying brick at a height of 30 or 35 feet from a scaffold built on the outside of the wall. The scaffold was not guarded in any way. There was no rail or screen as required by the building code of the city of New York. A 12-year-old boy on an adjoining lot was injured by a piece of brick which fell from the place where the subcontractor's workmen were breaking brick on the scaffold. The New York Court of Appeals reversed the judgment of the trial court dismissing the complaint against the general contractor and remanded the case for trial.

This exception to the rule of nonliability of a general contractor is premised upon the assumption that the contractor knows of the unlawful and dangerous condition and fails to exercise any right of control by which he could have caused changes or corrections to be made. It seems to me that these questions of fact remain to be resolved and that they are an issue in this case.

I would reverse the summary judgment and remand the case for further proceedings.