HOBBS-WESTERN COMPANY *v.* CARMICAL.

4-4116

Opinion delivered January 27, 1936.

*W. N. Ivie, Steve Carrigan* and *Duty & Duty,* for appellants.

*W. S. Atkins* and *Ned Stewart,* for appellee.

BUTLER, J.   On the night of April 17, 1934, Glen Carmical, while driving an automobile, his left arm resting in the open window with his elbow extending outside, met a truck loaded with cross-ties coming from the oppo-

site direction. As the vehicles were passing each other, Carmical's elbow came in contact with one of the cross-ties. The impact shattered the elbow resulting in the subsequent amputation of his arm. One, Archie Williams, was the driver of the truck, and John Westmoreland, an agent of Hobbs-Western Company, was riding in the cab with the driver and Charlie Hollis, these three being on the driver's seat. Carmical brought suit against Hobbs-Western Company, Archie Williams and John Westmoreland, and recovered a verdict against the three for damages for personal injury in the sum of $15,000.

We will consider in reverse order the grounds for reversal argued in appellants' brief.

It is insisted that the evidence failed to establish the acts of negligence alleged by the plaintiff (appellee). The negligence alleged and relied on at the trial was that the motor vehicle causing the injury when loaded was in excess of 80 inches in width, and that it was being driven without clearance lights contrary to the requirements of the traffic laws of this State which provide that "every motor vehicle * * * having a width at any part in excess of 80 inches shall carry two clearance lights on the left side of such vehicle; one located at the front, and displaying a white light visible under normal atmospheric conditions from a distance of 500 feet to the front of the vehicle, and the other located at the rear of the vehicle and displaying a yellow or red light visible under like conditions from a distance of 500 feet to the rear of the vehicle." Acts 1927, p. 721, § 48.

The other ground of negligence pleaded was that the cross-ties were so loaded as to permit one of them to extend beyond the others which struck and injured the appellee. It is the contention of the appellants, that the truck was being driven on the proper side of the highway and that the injury was occasioned by the inattention and negligence of the appellee and not through any fault on their part; that he carelessly drove his car too near the rear end of the truck with his elbow negligently extended outside his automobile and that this was the proximate cause of his injury.

The testimony, viewed in the light most favorable to the appellee, is to the following effect: The highway, at the point where the injury occurred, consists of a pavement 14 feet wide with 3 feet shoulders on each side, these being about level with the pavement. Carmical was driving with a young lady companion seated with him on the front, or driver's, seat. He was traveling at about 15 or 20 miles an hour with his left arm resting in the open window on the driver's side, his elbow extending outward approximately 4 inches. He saw the lights of a motor vehicle approaching and drew to his right about even with the outer edge of the pavement. The truck was being driven at about the same rate of speed as the automobile. Carmical passed the front end of the vehicle in safety, but before the two had completely passed each other he suffered a blow to his elbow causing the injury complained of. Immediately after the vehicles had passed each other, the occupants of the truck stopped because of outcry which was heard and the sound of the breaking of glass. Carmical's automobile also stopped and the injured man was driven to the hospital by one of the occupants of the truck. An examination of the load on the truck disclosed the fact that one of the ties near the rear end protruded beyond the other ties and upon this was found blood which showed that it was this cross-tie which struck appellee's elbow. A police officer examined the scene of the accident and found shattered glass and blood on the highway about a foot and a half on the right hand side of the middle of the pavement. The truck was composed of a cab to which was attached a trailer. The trailer was fifteen feet, 10 inches long and it was upon this that the cross-ties were loaded, placed across the bed of the truck from front to rear. They extended back from the front end of the trailer about thirteen feet, no ties being loaded on the last two feet, ten inches of the bed of the truck. The cross-ties were ninety-six inches long, and the truck carried no clearance lights at the front or rear. While this is not negligence *per se,* it is evidence to be considered by the jury of that fact. *Pollock* v. *Hamm,* 177 Ark. 348, 6 S. W. (2d) 541. And this, together with other evi-

dence, is sufficient to submit the question of the negligence of the operator of the truck to the jury.

As to the contributory negligence of the appellee urged by the appellants, but little need be said. This question was submitted to the jury under instructions which are admittedly correct declarations of law. The contention of appellants is based on the fact that appellee's elbow extended outside the window of his automobile about four inches. Automobiles, as to their width, are of standard make and we accept as a matter of common knowledge that under the evidence in this case appellee's elbow would not have extended beyond the outer edge of the running board of the automobile. Certainly, it cannot be said that the minds of all reasonable men would conclude that the conduct of the appellee was negligence.

The contention is also made that the court in instruction No. 2, given at the request of appellee, erred in construing the law relating to the duty to maintain clearance lights to apply to the truck involved, if it, "as loaded," was in excess of 80 inches, and if it had no clearance lights, instructing the jury that it might consider this in passing on the question of the driver's negligence. The contention is that the court erred in thus interpreting the statute for the reason that the statute made no mention of the width of the load being conveyed on the vehicle, but specifically applies only to the vehicle itself and is therefore limited in its application to the width of the vehicle irrespective of the width of the load carried. It is argued that under the construction of the statute given by the court, one operating a truck would have to change the lights to conform to the width of the load carried. We think the construction placed by the court, as applied to the truck in the instant case was correct, for it was constructed so as to carry loads of varying widths. The construction which the appellant would have us adopt would serve to nullify the purpose of the enactment in many instances. That purpose was to promote the safety of those using the highways from an increased hazard arising from meeting and passing vehicles of unusual width. It was this the statute would

64

safeguard by the requirement for clearance lights, and whether the width arose from the vehicle as constructed, or as loaded, would be immaterial. The "trailer" on which the ties were loaded was an unenclosed rectangular frame upon which the load was placed, and which itself did not exceed eighty inches in width, but was so constructed as to admit a load exceeding that figure and which was ninety-six inches in fact, when appellee was injured.

In construing the statute inquiry should be made as to the object to be accomplished by it, and when this is understood, general words may be narrowed or specific terms expanded to carry out its purpose. *Hermitage Sp. Sch. Dist.* v. *Ingalls Sp. Dist.,* 133 Ark. 157, 202 S. W. 26; *Logan* v. *State,* 150 Ark. 486, 234 S. W. 493; *Gill* v. *Saunders,* 182 Ark. 453, 31 S. W. (2d) 748; *Ark. Tax Com.* v. *Crittenden Co.,* 183 Ark. 738, 38 S. W. (2d) 318.

We pass to the important question involved, namely, whether under the evidence, it can be said as a matter of law that Williams, the driver of the truck, was an independent contractor for whose negligent act Hobbs-Western Company would not be liable; or, was he a servant for whose negligence the company would be liable under the rule *respondeat superior?* The rule governing this question has been well stated in the case of *Mississippi River Fuel Corporation* v. *Morris,* 183 Ark. 207, 35 S. W. (2d) 607, cited by the appellants, which is that an independent contractor is one who renders service in the course of an occupation representing the will of his employer only as to result of his work and not as to the means by which it is accomplished; the decisive question is, had the employer or contractor the right to control the conduct of the person doing the work? The case of Miss. River Fuel Corp. *supra* quoting 14 R. C. L. and *Moore Lumber Co.* v. *Sarrett,* 170 Ark. 92, 279 S. W. 4, cited by the appellants, thus states the rule: "The vital test in determining whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer. Stated as a general proposition, if the contractor is under the control of the em-

ployer, he is a servant; if not under such control, he is
an independent contractor. An independent contractor
is one who, exercising an independent employment, con-
tracts to do a piece of work according to his own meth-
ods, and without being subject to the control of his em-
ployer, except as to the result of the work.''

It is insisted by the appellants under the rule stated
that the undisputed evidence establishes the fact that
Archie Williams, the driver of the truck, was an inde-
pendent contractor, whereas it is appellee's contention
that the evidence makes it a question for the jury to
say whether Williams was such or a servant of Hobbs-
Western Company for whose negligence it would be liable.
The evidence on this branch of the case tending to estab-
lish the contention of the appellee is to the effect that
Westmoreland was the agent of the Hobbs-Western Com-
pany at Hope, Arkansas. His general duty was that
of tie inspector and he was not as a rule authorized to
represent the company in the transportation of ties. The
company had a tie yard at Hope and also one at Nash-
ville. The ties on the Nashville yard had been shipped
with the exception of a few remaining insufficient to
make a car-load. Westmoreland was authorized to have
these ties moved from the Nashville yard to the yard at
Hope. He contacted Charlie Hollis who had a truck
and who had hauled ties for Westmoreland before that
time. Westmoreland agreed to pay Hollis eight cents
per tie for moving them to Hope. Hollis' truck was out
of commission and he told Westmoreland that he could
not move the ties himself, but that he would get a man
for him (Westmoreland). Williams owned a truck with
which he did hauling for different people. It was of
the ''trailer type.'' Hollis saw Williams who agreed to
haul the ties for eight cents each. This fact was reported
to Westmoreland by Hollis and he directed Hollis to
bring Williams to his house that night and said that he
would go with them for the ties. Williams, accompanied
by Hollis, went with his truck to the house of Westmore-
land on the night of April 17 and the three proceeded
from Hope to Nashville where they loaded 71 ties. The
truck had no sides but consisted of a frame upon which

the ties were loaded cross-wise. There is evidence that Westmoreland assisted in loading the ties and when the truck was loaded he got in the driver's seat on the cab of the truck sitting next to the driver, Williams, with Hollis sitting on the outside of the same seat. In this manner they started on the return journey to Hope during which the injury was sustained by Carmical as heretofore stated. When the accident occurred Hollis got in Carmical's automobile and drove him to Hope. Westmoreland remained in the truck with Williams and directed him to the tie yard of the company in Hope and showed Williams where and how to stack the ties.

There is testimony disputing some of the essential facts in the evidence above set forth, but, as the jury, who is the sole judge of the credibility of the witnesses, has resolved the conflict in favor of the appellee, we must accept the above as the proven facts.

Appellants insist that as the undisputed evidence is to the effect that Williams furnished his own method of conveyance, bore the operating expenses of his truck, and for his services was paid a stipulated sum, this establishes his relationship with the appellant company as that of an independent contractor. This contention overlooks the evidence which tends to show the control retained over the work by Westmoreland. A reasonable inference to be drawn from the evidence is that Westmoreland intended to, and did, retain the right to give directions in regard to the details of the work. In the case of *Ice Service Co.* v. *Forbess,* 180 Ark. 253, 21 S. W. (2d) 411, we said: "The conclusion as to the relationship must be drawn from all the circumstances in proof, and where there is any substantial evidence tending to show that the right of control over the manner of doing the work was reserved, it became a question for the jury whether or not the relation was that of master and servant." The circumstances proven in the case at bar raise a question as to the relationship of the truck driver to the Hobbs-Western Company to be determined by the rules announced in the cases cited, *supra,* which question the trial court properly submitted to the jury.

In the case of *Ellis* v. *Warner*, 180 Ark. 53, 20 S. W. (2d) 320, an injury was occasioned by a truck engaged in hauling gravel to be distributed along a public highway. Those engaged in hauling the gravel owned their trucks, paid all operating expenses, worked as and when they desired and were paid 20 cents per ton for a mile haul. The work was done for a firm engaged in the construction of the road and the gravel distributed along the highway as, and where, directed by said firm. Under that state of facts it was held that the question as to whether the operator of a truck was an independent contractor or a servant of the firm was one for the jury.

It is not contended that the verdict was excessive, and since the evidence warranted the submission of the case to the jury, the judgment of the lower court is affirmed.