MEYER *v.* MOORE.

4-5037

Opinion delivered April 18, 1938.

*W. P. Smith* and *H. W. Judkins,* for appellant.

*E. E. Kelley* and *Richardson & Richardson,* for appellee.

DONHAM, J. On the second day of June, 1937, appellant and appellee entered into a contract by which appellant employed appellee to load scrap iron into railroad cars. Said contract was in writing and was as follows:

"This memorandum of agreement made and entered into on this 2d day of June, 1937, by and between A. J. Meyer as party of the first part, and Ernest Moore, and ................................, as parties of the second part, Witnesseth:

"That the party of the first part agrees to pay to the party of the second part ten dollars ($10) as independent contractors for the loading of scrap iron in and upon railroad cars; the said parties of the second part agreeing to perform such work, according to the rules of the railroad company, and in compliance with all laws; and that they will employ their own labor and pay same at their own discretion, and that the said principal contractor, Meyer, has no control or supervision as to the manner or means of such loading; or of the parties employed to perform such work; the payment of said lump sum for such services being all of his duties with reference to such work. The said parties of the second part hereby agree that they will post by tacks, at each car loaded, at points of loading, the following notice: 'This car is being loaded with scrap iron and junk by the undersigned, as independent contractor, with the principal, A. J. Meyer, without any supervision or direction on the part of the said principal contractor, A. J. Meyer, and I assume full responsibility and any liability for any injury which might happen to whomsoever by reason of my negligence or the negligence of my employees.'"

While loading a railroad car with scrap iron appellee was injured. When the car, being loaded at the time appellee was injured, was about three-fourths full of scrap iron, a truckload of heavy pieces, such as large pulleys, old automobile motors, etc., was purchased by appellant. The appellee and other parties engaged in loading the car undertook to load these heavy pieces from the truckload which had been purchased by appellant. Some of these pieces were of great weight and could not be carried from the truck to the car. A runway composed of wood and metal was supplied by appellant. Appellant directed the operator of the truck to back same up within twelve to fifteen feet of the car being loaded and directed the employees to place a wooden horse on the ground between the truck and the car and further directed them to place wooden boards from the car over to said horse and metal pieces for flooring from said horse into the car. At the time said truck was placed and the runway constructed, appellee was not present. He had gone to return a borrowed implement to its owner. In his absence, witnesses say the appellant directed the placing of the truck and the construction of the runway. The end of the metal pieces that extended into the car were placed on scrap iron already in the car, all this being done, according to the testimony of several witnesses, under the direction of appellant, and, as stated, in appellee's absence.

The runway was so constructed as to form a gradual incline from the truck to the car. After the runway was completed, employees began to move a heavy automobile motor block along the runway. When said motor block had been moved on said runway until it reached the metal slabs extending into the car and was resting on same, appellee returned from the trip he had made to return the borrowed implement hereinabove spoken of. When he returned he took his place beside the metal portion of the runway, and said heavy automobile motor block being pushed along the runway at the time was turned over on the metal pieces, of which a portion of the runway was constructed, causing one of them, be-

cause of its insecure footing as it rested upon pieces of the junk in the car, to be knocked from its position and to fall out of the car, thereby causing it to strike appellee, knocking him down, cutting his left hand, bruising his right leg, and otherwise injuring him.

As a result of the injuries received by appellee, he was unable to work for approximately two months thereafter. He was treated by a physician and incurred a small bill for treatment.

Upon a trial of the issues, the jury returned a verdict for appellee in the sum of $81.28. A judgment was rendered for appellee, based upon said verdict. Appellant filed a motion for a new trial which was overruled; and he thereupon prayed and was granted an appeal to this court.

In the trial of the case, appellant relied almost exclusively upon the defense set up in his answer to the effect that appellee was an independent contractor and that, therefore, there was no liability on his part for appellee's injuries. At the conclusion of the evidence on behalf of appellee, and again after all the evidence in the case was introduced, appellant asked the court to direct a verdict in his favor. The instructions in the case have not been abstracted, and appellant does not rely for reversal on error in the instructions.

The question for this court to determine is whether appellee was an independent contractor in such sense that it was the duty of the trial court to direct a verdict for appellant, or whether on the other hand the evidence made it a jury question as to whether appellee was an independent contractor, or, if he was an independent contractor, whether appellant interfered and assumed to direct the work in such manner as would make him liable for appellee's injuries.

Pertinent parts of the evidence on the question of whether appellee was an independent contractor, and on the further question of whether appellant interfered with and assumed to direct the work are as follows:

Appellee testified: "I don't know who the boss was unloading this car, unless it was A. J. Meyer; he was

bossing all the time; he rushed us up; he made the remark he wouldn't give fifteen cents a day for the work we were doing; he told us how to load this car; he came out all the time and made remarks, and I figured he was bossing; we tried to do what Meyer told us; Meyer expected us to follow his instructions; he told us how to do it and what to do; Meyer bossed the job all the way through.''

Bill Reeves testified: ''A. J. Meyer kept the time; he was the man that paid off; Meyer was the boss on the job; he was present when the runway was fixed; he was not present when Moore got hurt; the runway was fixed as A. J. Meyer told us to fix it; Ernest Moore had gone down to Sloan's gin at the time; that was the runway that went from the truck over to the car, part of which came out and struck Moore; when this truck drove up there, backed in, Mr. Meyer told us to put the runway up; there was about a twelve foot runway about three or four feet wide; Mr. Meyer was there and told us how to lay each piece of the running board, told us to put the pieces in the car which we did. The pieces in the runway went from the car over to the horse; if I had been fixing it myself, I would have fixed it some other way; we fixed it like Mr. Meyer said; I knew it was wrong.''

Robert Wells testified: ''I was helping to load the car when Mr. Moore got hurt; Mr. Meyer told us to fix the runway from the truck to the car; Mr. Meyer told us when and how to do it; he had charge of the work; I was working for Mr. Meyer; he paid; Mr. Moore hired me; the skid struck Mr. Moore when it came out of the car; Mr. Meyer had told us how long it would take to load the car and I thought it ought to be done by that time; Mr. Meyer was not there when Mr. Moore got hurt; Mr. Meyer came down there just after the truck came and Mr. Moore was gone. Mr. Meyer had us to fix the runway that turned over and hurt Mr. Moore; the injury was caused by the skid falling, and this was caused by the jar of the motor.''

Red Duckworth testified: ''I was present when Mr. Meyer had the runway arranged from the truck over to

the car; Mr. Meyer was the one who told us how to do it; I was helping to put the motor into the car and Mr. Moore was standing on the ground beside the runway; he was holding the motor to keep it from falling off, with his back to the car; when the motor rolled on the metal runway that went from the horse to the car, there was some jar; the piece slid out of the car, struck Mr. Moore, and knocked him down; I would say that Mr. Meyer was the boss; we were obeying his instructions."

The appellant, A. J. Meyer, testified in his own behalf, and the substance of his testimony was that he had nothing to do with loading the car; and that same was being loaded by Moore as an independent contractor without any supervision on his part whatever. He testified that he did not undertake to supervise the work; that he was not there when they started to unload the truck; that he had nothing to do with laying the running boards; and that since Moore had signed the contract he did not think he should be held liable.

Ross Dowell, a witness called by appellant, testified: "The way they were fixing the skid, it looks like the injury was caused by carelessness; Mr. Moore was among them; Mr. Meyer was not in or near the car as I remember it; nobody seemed to be responsible about fixing the skids, just threw them up on the pile any old place to wheel the stuff up there; Mr. Meyer told him to back the car up where the boys were loading and he did as he was told."

No alleged error is relied on by appellant, except the failure of the trial court to direct a verdict in his behalf.

As heretofore stated, the instructions are not abstracted. It must be assumed that the jury was properly instructed. Under this state of the record, was it a jury question as to whether appellant was liable? If so, the judgment must be affirmed.

In 39 C. J., p. 1319, § 1521, it is said: "The fact that the right of supervision is reserved to the owner or his representative for the purpose of seeing that the specific work is done in compliance with the contract will

not prevent the employee from being an independent contractor, and as a consequence thereof, such reservation by the owner will not relieve the employee from being solely liable for his own negligence. In other words, the retention of the right to supervise as to results, as distinguished from the right to supervise as to the means by which the intermediate result should be obtained, does not affect relationship.

"It is only when the employer goes beyond the limit of that right and commits some affirmative act of negligence, as by taking some part in the performance of the work other than such general supervision as is necessary to insure its performance, that he is chargeable."

It will be noted from the above rule that it is only when an employer goes beyond the limit of his contract and commits some affirmative act of negligence, as by taking some part in the performance of the work other than such general supervision as is necessary to insure its performance, that he is liable.

Again, we find in 39 C. J., p. 1321, the following statement: "The right of supervision means merely the right to approve or disapprove the results of the work and does not give the owner the right to make directions as to the mode of arriving at such results."

It was the duty of the court to define the relationship of employer and independent contractor; and since appellant makes no contention that the court's instructions were erroneous and did not abstract the instructions, it must be assumed that the court correctly instructed the jury as to this relationship. Furthermore, it was the duty of the court to instruct the jury as to the exceptions to the general rule that an employer is not liable for injuries to an independent contractor or the servants of an independent contractor. It must also be assumed that the court correctly charged the jury on this feature of the case.

In the case of *Chapman Dewey Lumber Co.* v. *Andrews*, 192 Ark. 291, 91 S. W. 2d 1026, this court said: "We cannot agree with appellant that the court erred in refusing its request for a directed verdict in its favor.

On the contrary, we are of the opinion that the question was one for the jury. We have many times held that 'an independent contractor is one who, in the course of an independent occupation, prosecutes and directs the work himself, using his own methods to accomplish it and represents the will of the employer only as to the result of his work.' Headnote, *Ellis & Lewis* v. *Warner*, 180 Ark. 53, 20 S. W. 2d 320. Also that such status is usually a question of fact for the jury. It is the duty of the court to define the relationship and for the jury to determine its existence. *Ellis & Lewis* v. *Warner, supra.* In this case the facts are sufficient to take the question to the jury. While it is true that Haley had a contract to load piling for appellant at so much per lineal foot and that he paid appellee for loading piling at Weona, it is also true that appellant directed the loading, what, when, and how to load, and directed appellee and the other employees in such work, furnished all utensils and tools, except the team of mules, used in the loading. It kept a foreman or inspector on the job at all times, whereas Haley was frequently not there. These facts are sufficient, if believed by the jury, to show that Haley was an employee of appellant, and that it retained and exercised control over the work, and that he did not represent the will of appellant only as to the result of this work. See *Hobbs-Western Co.* v. *Carmical*, 192 Ark. 59, 91 S. W. 2d 605.''

In the case of *Ice Service Co.* v. *Forbess*, 180 Ark. 253, 21 S. W. 2d 411, this court said: ''The conclusion as to the relationship must be drawn from all the circumstances in proof, and, where there is any substantial evidence tending to show that the right of control over the manner of doing the work was reserved, it became a question for the jury whether or not the relation was that of master and servant.'' Citing *Magnolia Petroleum Co.* v. *Johnson*, 149 Ark. 553, 233 S. W. 680; *Harkins* v. *National Handle Co.*, 159 Ark. 15, 250 S. W. 900.

Again, in the case of *Hobbs-Western Co.* v. *Carmical*, 192 Ark. 59, 91 S. W. 2d 605, the court approved the

above-quoted rule, and held that the question as to whether Williams, using his own truck and engaged in hauling crossties, and whose act it is alleged caused the injury to Carmical, was an independent contractor of the Hobbs-Western Company, or on the other hand was a servant of said company, was a question of fact for the jury.

Again, this court recently said in the case of *Humphries and Kroger Grocery & Baking Co. v. Kendall, ante* p. 45, 111 S. W. 2d 492, that: "Where, however, the employer is himself guilty of any negligence causing or contributing to the injury, he is liable to the injured party without regard to whether there is an independent contractor. Where both the independent contractor and the employer are guilty of negligence, the employer is liable, and wherever the employer interferes in any way with the work and superintends or controls its performance this destroys the relation of independent contractor."

The testimony in the instant case was sufficient to warrant the jury in finding that the relation which Moore, the appellee, sustained to the appellant was that of a servant, rather than that of an independent contractor. As heretofore stated, if the written contract alone was all that it was necessary to take into consideration in determining this question, then, of course, it would be necessary to hold that Moore was an independent contractor, and that Meyer would not be liable. However, if Meyer interfered with the work and assumed the right to give directions, as outlined by the evidence hereinabove set out, then this fact, as well as the written contract, must be taken into consideration. From all of the facts in the case, the jury had a right to conclude that Moore was not an independent contractor.

If the evidence of a number of witnesses who testified for appellee is to be believed, Meyer not only assumed the right to direct the work of constructing the runway from the truck to the car, but from the evidence given by these witnesses it became a question of fact as to whether said runway was negligently constructed. The metal pieces which extended into the car were placed on

the junk lying in the doorway. They were, therefore, not steady and were thus made insecure. Since there is substantial evidence to the effect that the appellant did interfere and assume the right to direct the work, the question of his negligence became one of fact for the jury. The question of whether appellee assumed the risk was likewise a question for the jury, as was the question of his contributory negligence.

The jury, having decided that appellant is liable, and there being substantial evidence to support the jury's verdict, the judgment will be affirmed. It is so ordered.