Mrs. Gertrude TERRY, Administratrix of the Estate of A. F. Terry, Deceased, Plaintiff,

v.

A. P. GREEN FIRE BRICK COMPANY, Defendant.

No. 3362.

United States District Court
E. D. Arkansas, W. D.
July 16, 1958.

M. V. Moody, Little Rock, Ark., for plaintiff.

Barber, Henry, Thurman & McCaskill, A. L. Barber, Austin McCaskill, Little Rock, Ark., for defendant.

LEMLEY, District Judge.

This cause having been tried to the Court and submitted upon the pleadings,

the evidence produced in open court, and written briefs, and the Court being well and fully advised doth file this memorandum opinion, incorporating herein its findings of fact and conclusions of law.

The plaintiff, a citizen of Arkansas, brought this action as administratrix of the estate of her deceased husband, A. F. Terry, against the defendant, a Missouri corporation, to recover damages claimed to have been sustained by the estate of the deceased and by herself, as his widow and next of kin, on account of Mr. Terry's accidental death, which occurred on October 2, 1956 while he was undertaking to unload from a dump truck a load of clay on an earthen ramp on the defendant's premises at Bauxite, Saline County, Arkansas. The amount in controversy herein is greatly in excess of $3,000, exclusive of interest and costs.

The defendant is a manufacturer of bricks and other clay products; it obtains its clay from a pit some miles away from its plant, which clay is hauled from the pit by means of dump trucks. At the time of the accident complained of the hauling was being done in trucks belonging to and being operated by drivers employed by one James Nutt, an independent contractor, and his sub-contractor, N. K. Ball. The deceased, who had had some prior experience as a truck driver, was regularly employed by Ball as a mechanic, but on the day in question he had been assigned to drive one of the trucks that Ball had supplied to Nutt under the subcontract that has been mentioned. The truck drivers, including the deceased, were employed, discharged, compensated and controlled by Nutt and Ball, and the defendant had nothing to do with such matters, except that it did give directions as to where the clay was to be dumped on its premises.

As clay was brought to the defendant's plant, it was dumped on a stock pile, and was dug out of that pile for processing by means of a mechanical shovel, referred to in the evidence as a "front end loader." That machine on the date of the accident was being operated by one Jesse Lowery, an employee of the defendant. The stock pile was approached by means of two parallel earthen ramps which had been made up by successive dumpings of material; when a truck driver would arrive at the plant, he would back his truck up one of those ramps and dump his load. The two ramps were described in the pleadings and evidence as the "north ramp" and the "south ramp," and it appears that the operator of the front end loader would designate from time to time the particular ramp to be used by the truck drivers.

Around 8:00 o'clock a. m., on the date of the accident, three trucks loaded with clay left the pit and headed for the defendant's plant. The first of those trucks was driven by Zeddie Reed, the second by the deceased, and the third by J. E. Ball. On that day the drivers were supposed to dump from the south ramp, and Reed did so. While he was so engaged, the deceased came up behind him and stopped, and Ball stopped behind the deceased.

After Reed had emptied his truck, he reported to Mr. Terry that the south ramp was unsafe for dumping, whereupon the latter got out of his truck and walked onto the north ramp, and after inspecting it himself concluded to dump his load thereon. In proceeding from the south to the north ramp it was necessary for the deceased to pass by Lowery, who, as stated, was operating the front end loader; the deceased stopped his truck when he reached Lowery, and the latter told him that the drivers were supposed to dump from the south ramp. Terry replied that he had been told that the south ramp was unsafe, and that he was going to use the north ramp, and he put his truck again in motion toward that ramp. As he did so, Lowery called to him to tell him not to use either ramp but to dump his load on the ground; the deceased, however, either did not hear Lowery's call, or did not heed it, and proceeded to go on to the north ramp and to back his truck up on it.

The plaintiff alleged in her complaint, and undertook to prove that as a result of the alleged negligence of the defendant

the north ramp was in a caving and unsafe condition, and, further, that after the deceased had backed up on the ramp and had stopped his truck preparatory to dumping his load, Lowery negligently so operated the front end loader as to dig clay out from directly under the truck, and that as a result of the alleged condition of the ramp and of the alleged act of Lowery in operating the loader, the deceased's truck was precipitated to the bottom of the ramp, crushing the deceased beneath it and instantly killing him. The defendant has consistently claimed, on the other hand, that there was nothing wrong with the ramp, that Lowery did not dig any clay therefrom while the deceased was on it, and that he simply backed off of the ramp, and that his alleged negligence in so doing was the sole proximate cause of his death.

While the testimony as to how the accident occurred was conflicting, we find from a preponderance of the evidence that Mr. Terry's death was not caused by any defect in or dangerous condition of the ramp or stock pile, or by any act of Lowery, negligent or otherwise, in digging material therefrom while the deceased was on it; and we further find from a preponderance of the evidence that the deceased simply backed his truck up the ramp at an angle and ran over the edge. In this connection the defendant introduced certain photographs in evidence showing the ramp, the tracks of the deceased's truck thereon, and the place where the truck left the ramp; those photographs, as interpreted by J. E. Nutt, a trucker of many years experience, and who qualified as an expert, convincingly show that the deceased backed up the ramp at an angle, that the right rear wheels of his loaded truck went off of the edge, thus flipping the entire vehicle up and over and sending it rolling down the side of the ramp. And we

credit the testimony of Lowery to the effect that he did not dig any clay from under the truck, as claimed by the plaintiff.

After Mr. Terry's death the plaintiff, as his widow, filed a claim against Nutt and Ball before the Arkansas Workmen's Compensation Commission, and received an award of $8,000, payable in weekly instalments of $25 each, less a $200 attorney's fee allowed her counsel.[1] At the pre-trial conference held in this case it was stipulated that the deceased at the time of his death was fifty-three years of age, that he had a life expectancy of twenty-one years, that he was sober and industrious; that he was regularly employed as a mechanic, but that at the time of his death he was working as a truck driver, and that his rate of pay was $2.65 per hour.

It developed in the course of the trial that on the day of the accident there was no one on the ground directing the truck drivers, including the deceased, in the backing of their trucks and the dumping of their loads; and it appeared from the evidence, and we find that if a spotter had been present and had directed the deceased in the backing of his truck and the dumping of his load, the accident could have been avoided. The evidence also showed that at times the employees of the defendant had spotted trucks when such employees had nothing else to do, but that at least the primary purpose of such spotting was to govern the shape and direction of the stockpile, which was necessary if the material was to be efficiently handled by the loading machine. There was no showing, however, that a spotter was regularly provided by the defendant, or that any employee of the defendant was undertaking to spot trucks on the day in question, or that the deceased was relying on any spotter,

1. Under the Arkansas Workmen's Compensation Act the remedy provided thereby is exclusive as between employer and employee, including the latter's survivors. But the Act preserves a right of action against a third-party tort feasor whose conduct has produced injury or death, Ark.Stats.1947, Section 81–1340. It is the theory of the plaintiff that her husband was an employee of Nutt or Ball, or of both of them, and that the defendant is a third-party tort feasor.

or thought that any employee of the defendant was spotting for him.

When the evidence with regard to spotting came into the case, we were in doubt as to the law bearing upon the defendant's obligation, if any, to furnish a spotter, and on our own motion and in the interest of justice we announced that we were treating the pleadings as amended so as to raise the question; and the plaintiff now urges, in addition to her other contentions, that her husband, although an employee of an independent contractor, was engaged in an inherently dangerous task, and that the defendant owed him a non-delegable duty to furnish a spotter, that it negligently failed to perform that duty, and that it is liable to her on that account, notwithstanding the fact that the work was being performed by independent contractors and their servants.

■ As has been said, the truck drivers, including the deceased, were employed, compensated and controlled by the independent contractors who owned the trucks; the only control exercised by the defendant over the drivers was to tell them where to dump their loads. In the light of those facts, which are undisputed, the parties in effect agree, and we find that the deceased at the time of his death was in the employ of an independent contractor, and was not a general or special employee of the defendant.[2] Hence, the real question is whether or not the defendant owed to the deceased, as an employee of an independent contractor, any duty to furnish him with a spotter, because if no

such duty existed, then the failure to provide a spotter could not constitute negligence. In this connection in 57 C.J.S. Master and Servant § 600, it is said that while a contractee is not absolutely exempt in all cases from liability for injuries to an employee of an independent contractor, "nevertheless he is not liable unless he owed some duty to the employee, he failed to perform that duty, and such nonperformance was the proximate cause of the injury."

■■ It is a general rule in Arkansas, as elsewhere, that a contractee is not ordinarily liable to an independent contractor or to the latter's servants for injuries sustained in the prosecution of the contracted work. Meyer v. Moore, supra, 195 Ark. 1114, 1120, 115 S.W.2d 1087; 57 C.J.S. Master and Servant § 600. And while there are exceptions to that general rule, the burden is upon the plaintiff to show that this case comes within one or more of them, Union Tank & Supply Co. v. Kelley, 5 Cir., 167 F.2d 811, 815; and this, in our estimation, she has failed to do.

■■ One exception to the general rule, recognized in Arkansas, is that a contractee will be held liable, at least to outside third parties who have sustained injury or damage, where the work that is being done constitutes a nuisance, or where damage is the natural and probable result of the work itself. White River Railway Co. v. Batesville & Winerva Telephone Co., 81 Ark. 195, 98 S. W. 721; Stout Lumber Co. v. Reynolds, 175 Ark. 988, 1 S.W.2d 77; Humphries v. Kendall, supra, 195 Ark. 45, 111 S.W.2d

2. See Humphries v. Kendall, 195 Ark. 45, 111 S.W.2d 492; Meyer v. Moore, 195 Ark. 1114, 115 S.W.2d 1087; Crossett Lumber Co. v. McCain, 205 Ark. 631, 170 S.W.2d 64; Ozan Lumber Co. v. Garner, 208 Ark. 645, 187 S.W.2d 181; Wren v. D. F. Jones Construction Co., 210 Ark. 40, 194 S.W.2d 896, and other decisions cited in those cases. It should be pointed out that a finding that the deceased at the time of his death was a general or special employee of the defendant would be fatal to the plaintiff's claim since such a finding would bring into play the exclusive remedy provisions of the Workmen's Compensation Act and would require a dismissal of the complaint. See the very recent decision of the Court of Appeals for the Fifth Circuit in Corban v. Skelly Oil Co., 256 F.2d 775, applying Arkansas law; and cf. Hopson v. United States, D.C. Ark., 136 F.Supp. 804, 813. As a matter of fact, the defendant has invoked, as an alternative defense, those exclusive remedy provisions should it be found that the deceased was its general or special employee.

492; Hammond Ranch Corporation v. Dodson, 199 Ark. 846, 136 S.W.2d 484; Giem v. Williams, 215 Ark. 705, 222 S.W.2d 800; McKennon v. Jones, 219 Ark. 671, 244 S.W.2d 138; Southwestern Bell Telephone Co. v. Smith, 220 Ark. 223, 247 S.W.2d 16. The instant case, however, obviously does not fall within this exception since the construction of the ramp and stockpile on the defendant's own premises was certainly not a nuisance, nor was injury the natural or probable consequence of the work itself, which was simply the unloading of clay from dump trucks.

 Another exception to the general rule arises where the contractee, either personally or through his employees, is guilty of some affirmative act of negligence which causes or contributes to the injury of an employee of the contractor. 57 C.J.S. Master and Servant § 601; Carroll v. Lanza, D.C.Ark., 116 F. Supp. 491, affirmed 8 Cir., 216 F.2d 808, reversed 349 U.S. 408, 75 S.Ct. 804, 99 L. Ed. 1183. It will be recalled that the plaintiff originally contended that the operator of the front end loader negligently dug clay from underneath the truck, and had the proof sustained that contention, the case would have come within the exception now under discussion; we have found, however, that the operator of the loader did not dig any clay from the north ramp while the deceased was upon it; and since there is no evidence of any other affirmative act of negligence on the part of the defendant, this exception avails the plaintiff nothing.

 It is also the law of Arkansas that where premises on which contracted work is being carried out remain under the control of the owner, employees of the contractor are deemed to be invitees, and the owner owes them the duty to use ordinary care to keep the premises in a reasonably safe condition, and to warn them of latent dangers thereon. Aluminum Ore Co. v. George, 208 Ark. 419, 186 S.W.2d 656. But again, our factual findings rule out this exception to the general rule; as stated, we have found that

Mr. Terry did not meet his death as a result of any unsafe or defective condition of the north ramp, but simply backed his truck over the edge thereof, and we have further found that before he undertook to back up the ramp, he had made a personal inspection of it and knew of its condition. While Glidewell v. Arkhola Sand & Gravel Co., 212 Ark. 838, 208 S.W.2d 4, is distinguishable from this case, the following language from the opinion therein is, in our estimation, pertinent:

"No negligence could be inferred from appellee's maintaining a large pile of ordinary sand on its premises and that it would be necessary for appellee to warn Dan Glidewell of any danger incident thereto. We know of no rule of law that would make a pile of sand, as here, *prima facie* dangerous. That piled sand when wet will stick, and when dry and piled over an opening, and released, will pour by gravity through an opening, is generally known to everyone. Appellee had no superior knowledge to that of the deceased in this regard. Therefore, there was no duty resting upon appellee to warn Dan Glidewell * * *" 212 Ark. at pages 845–846, 208 S.W.2d at page 9.

So here, it is a fact known to everyone that a truck being backed up a ramp may go over the edge if not driven in a straight line, and in view of the deceased's previous inspection of the ramp, there was no occasion to warn him of something that he should have already known.

 This brings us down to a consideration of the final exception which appears to us to be conceivably relevant here, and upon which, as we understand it, the plaintiff now principally relies, namely, that her husband in undertaking to back the truck up the ramp was engaged upon an "inherently dangerous" task and that the defendant owed him the duty to use ordinary care to see to it that such task was performed in a safe manner, more specifically that it was the

duty of the defendant to use ordinary care to supply a spotter. That exception, however, does not avail the plaintiff for two reasons now to be stated:

In the first place, in 57 C.J.S. Master and Servant § 600, it is pointed out that a contractee does not owe to employees of the contractor the same duties that he owes his own employees, or that he owes to third parties, and that a given act may be such as would render the contractee liable to a third person, although it would not make him liable to a servant of the contractor. And in Corban v. Skelly Oil Co., supra, a case somewhat similar to this, and wherein, as indicated, Arkansas law was applied the Court said:

"On behalf of Corban it is urged that the work being done at the time of his injury was inherently dangerous regardless of the equipment used, and that, in such cases, the principal owes a non-delegable duty to see that the work is performed with the appropriate degree of care. It has been stated that 'An employer is liable for injuries caused by the failure of an independent contractor to exercise due care with respect to the performance of work which is inherently or intrinsically dangerous. The theory upon which the liability is based is that a person who engages a contractor to do work of an inherently dangerous character remains subject to an absolute, non-delegable duty to see that it is performed with that degree of care which is appropriate to the circumstances, or, in other words, that all reasonable precautions shall be taken during its performance, to the end that third persons may be effectually protected against injury.' 27 Am.Jur. 517, Independent Contractors, § 39. Thus it appears that the rule is designed to protect third persons. As we have shown Corban was not in this class. We have seen no case where the inherently dangerous doctrine has been extended so as to permit an employee of an independent contractor to recover from the principal for a breach of the non-delegable duty * * *"

It is true that in Hopson v. United States, supra, 136 F.Supp. 804, 813–814, the Court apparently assumed without discussion that the exception in question does extend to the protection of an employee of an independent contractor; but that assumption was not necessary to the actual decision of the case, and it is noteworthy that none of the cases cited by the Court in that connection involved any injury to such an employee; in all of them outside third parties were involved. Under such circumstances we feel that we should follow the view of the Fifth Circuit as to the Arkansas law on this question, and we do so.

In the second place, even if we are wrong in the conclusion just set forth, we are unable to find from the evidence that the deceased when he undertook to back up the ramp was embarking upon such an inherently dangerous task as would cast upon the defendant the duty of supplying him with a spotter. The operation of dump trucks in the hauling of clay, gravel, sand and like material is an ordinary and common occupation, and necessarily involves the maneuvering, backing and turning of such trucks, including the backing up on earthen ramps; those tasks, while they, of course, contain possibilities of danger, are not extremely dangerous, nor do they require special skills or precautions beyond what truck drivers of ordinary prudence are supposed to possess or may be reasonably expected to take. In this connection in Union Tank & Supply Co. v. Kelley, supra, 167 F.2d at page 816, the Court said that the "intrinsically dangerous" exception "does not apply to dangers from obvious risks connected with ordinary tasks, such as construction, loading, and unloading, especially where, as here, special skill was not required to avoid injury but only the exercise of ordinary care. Cases where it typically applies are cases of 'unusual perils' such as * * * dangerous gas and oil tanks, dangerous electric wires, maintained and operated by the owner, and cases * * * where work of the owner is being carried on concurrently with the work of the independent contractor, and the negligence of the owner,

either operating alone or concurrently with that of the contractor, causes the injury." In the instant case the task was ordinary and the risk obvious.

 Counsel for the plaintiff has cited Section 414 of the Restatement of Torts and certain Comments thereunder to the effect that where an owner retains a measure of control over the work being done by an independent contractor, he is subject to liability for bodily injury to others, for whose safety he owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care; and counsel has also cited La Malfa v. Piombo Brothers, 70 Cal.App.2d 840, 161 P.2d 964, the decision in which case was based upon the Restatement rule just mentioned. We have no fault to find with this rule as an abstract proposition, nor with the result reached in the Piombo case. The difficulty with those citations is that the rule presupposes the existence of a duty of care toward the person injured, and such a duty existed toward the plaintiff in the Piombo case who was not an employee of an independent contractor; here, however, we have seen that the defendant owed the deceased no duty of care for his safety beyond the scope of the exceptions which we have heretofore discussed and found inapplicable. As we have repeatedly said, the only control over the truck drivers retained by the defendant here was with respect to where they dumped their loads, and Mr. Terry was not killed because he tried to dump on the north ramp but because he backed off of it. Actually, he was never instructed to dump on that ramp, but selected it himself, after making an inspection thereof, and he unfortunately either did not hear or did not heed (probably the former), the call of Lowery which would have been followed by instructions to simply dump the load on the ground.

Other cases cited by the plaintiff have been considered by us and found not to be in point. It follows that a judgment dismissing the complaint must be entered.