Thomas **DUNN**, Individually and as Next Friend of Billy Edward Dunn, a Minor, Appellee,

v.

**BROWN & ROOT, INC.**, Appellant,

Insurance Company of North America, Intervenor.

No. 71–1060.

United States Court of Appeals, Eighth Circuit.

Feb. 17, 1972.

John O. Moore, Texarkana, Ark., for appellant.

LeRoy Autrey, Texarkana, Ark., for appellee.

Before GIBSON and HEANEY, Circuit Judges, and VAN PELT, Senior District Judge.

HEANEY, Circuit Judge.

The question we must answer in this diversity case is whether, under Arkansas law, a contractor is liable for the injuries suffered by a subcontractor's employee, when it is alleged that the proximate cause of the injury was the prime contractor's negligent failure to perform its duties under the contract.

The jury returned a verdict in favor of the plaintiff for injuries received during the course of his employment with Stebbins Engineering and Contracting Company (Stebbins), a subcontractor of the defendant, Brown & Root, Inc. At the trial, the defendant had made a timely motion for a directed verdict which the trial judge denied. The defendant has now brought this appeal, contending that the District Court erred in denying its motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.

Brown & Root was engaged in constructing a paper mill. Stebbins had contracted with Brown & Root to line the inside of some steel tanks with tile. Stebbins' employees, including the minor plaintiff, worked from a circular platform suspended within the tank. The platform could be raised by means of jacks as the work progressed up the sides of the tank. The platform was secured by steel cables and safety lines attached through four "scaffold hanger nozzles" located at the top of the tank.

On the date of the accident, Stebbins' employees began to install "inserts" into each of the four hanger nozzles. In order to install an insert, they had to take the steel cables and safety lines out of the hanger nozzle. Each time this was done, they attached a chain hoist to the platform and secured it at the top of the tank to hold up that part of the platform. The workmen lining the tank continued their work during the installation of the inserts.

Near the end of the day, it was decided that the platform should be raised; but, because the installation of the inserts had not been completed, only three

of the steel cables and safety lines were in place. The fourth had been disconnected to permit installation of the remaining insert, and the platform was held secure at that point by a chain hoist. As the platform was being raised, the chain hoist gave way and the platform tilted violently. The plaintiff fell sixty-five feet to the ground.

It is not disputed that, at the time of the injury, the plaintiff was performing work delegated to Stebbins by contract and was under Stebbins' sole supervision.

The case was tried and submitted to the jury principally[1] on the theory that Brown & Root was liable for the plaintiff's injuries because it had negligently failed to complete installation of the nozzles, including the inserts, as required by contract, prior to furnishing the tanks to Stebbins for lining, and that having failed to install the inserts, it had not thereafter insured that the installation could be carried out safely.

The defendant argues that, but for the exceptions inapplicable here, a prime contractor is not liable for injuries sustained by an employee of a subcontractor while the employee is engaged in the contracted work. It cites Corban v. Skelly Oil Company, 256 F.2d 775 (5th Cir. 1958) (applying Arkansas law); Terry v. A. P. Green Fire Brick Company, 164 F.Supp. 184 (E.D.Ark.1958), appeal dismissed, 268 F.2d 213 (8th Cir. 1959); Gordon v. Matson, 246 Ark. 533, 439 S.W.2d 627 (1969); Meyer v. Moore, 195 Ark. 1114, 115 S.W.2d 1087 (1938).

■ However, where the prime contractor is itself guilty of negligence causing or contributing to the injury, it cannot escape liability. See, Terry v. A. P. Green Fire Brick Company, supra, 164 F.Supp. at 188; Carroll v. Lanza, 116 F.Supp. 491, 505 (W.D.Ark.1953), rev'd in part, 216 F.2d 808 (8th Cir. 1954),

rev'd, 349 U.S. 408, 75 S.Ct. 804, 99 L. Ed. 1183 (1955); Gordon v. Matson, supra, 439 S.W.2d at 629; Aluminum Ore Co. v. George, 208 Ark. 419, 186 S.W.2d 656 (1945).

The defendant contends that liability should be restricted to those instances in which the prime contractor is guilty of some affirmative act of negligence which causes injury to the subcontractor's employee. See, Carroll v. Lanza, supra; Aluminum Ore Co. v. George, supra. We do not agree that such a restriction is called for by Arkansas law.

■ The most recent discussion of what constitutes negligence on the part of the prime contractor is found in Gordon v. Matson, supra, 439 S.W.2d at 629:

"It appears to be the general rule that the responsibilities of the prime contractor to employees of the subcontractor on the job are comparable to the duties of the owner of the premises. This is a duty to exercise ordinary care and to warn in the event there are any unusually hazardous conditions existing which might affect the welfare of the employees. The recognized exception occurs if the prime contractor has undertaken to perform certain duties or activities and negligently fails to perform them thereafter or perform them in a negligent manner. Aluminum Ore Co. v. George, 208 Ark. 419, 186 S.W.2d 656."

See also, Terry v. A. P. Green Fire Brick Company, supra, 164 F.Supp. at 188; Carroll v. Lanza, supra, 116 F. Supp. at 504, 505. Thus, it appears that a prime contractor may be held liable for failure to perform a duty which it has undertaken. The defendant cites some cases, relying on Arkansas law, in which courts have found a prime contractor not liable where the action was based on a failure to act. But in none of these cases had it been alleged that

---

1. The case was also tried on the theory that the work on the scaffold was inherently dangerous and that this imposed a special duty upon the defendant to ensure the safety of those working on the scaffold. However, the jury was not instructed by the trial judge in this regard.

the prime contractor's duty was based on a specific contractual provision. See, Corban v. Skelly Oil Company, *supra*; Terry v. A. P. Green Fire Brick Company, *supra*; Gordon v. Matson, *supra*.

In this case, the plaintiff argues that the defendant's duty to install the hanger nozzles, as set forth in the contract,[2] included a duty to install inserts. The hanger nozzles were installed but the inserts were not. Both at the trial and on this appeal, the defendant has argued that it had no duty to install the inserts. The trial judge instructed the jury that under the contract, the defendant was to install the hanger nozzles in accordance with the drawing designated as 74290. This drawing showed the nozzles with the inserts installed. The contract itself stated that Brown & Root, Inc., was to " * * * install in place all fittings, inserts, bolts, etc. * * * ". The defendant called Stebbins' superintendent who testified that Stebbins had always installed such inserts in the past. He stated that the designation "[b]y SEM-CO" next to the word "insert" on the drawing 74290 meant that Stebbins was not only to supply but also to install the inserts. However, this witness was not an engineer but a bricklayer; and during cross-examination, he admitted that he was unfamiliar with the terminology of specifications, and became confused as to which part of the drawing represented the hanger nozzle and which represented the insert.

We cannot substitute our judgment for the jury's in evaluating the credibility of this witness or the conflicting evidence. We think there is sufficient evidence in the contract itself to support a finding that it was the defendant's duty to install the inserts.

Furthermore, there was sufficient evidence to support a jury finding that the defendant was negligent in not installing the inserts prior to Stebbins' beginning work, or that having failed to so install them, it was negligent in not insuring that the work was carried out safely thereafter. The trial judge properly instructed the jury that "Brown & Root, Inc. was required to use ordinary care in the performance of any duty assumed by it under the contract." See, Arkansas Model Jury Instruction 1204 and the cases cited therein.

Here, the function of the hanger nozzles was to provide a place to secure the platform on which Stebbins' employees were to work. To install the inserts once the platform had been set up and work begun necessitated disconnecting the safety lines and cables attached through the hanger nozzles. It is reasonable to infer that this created a greater risk for those employed within the tank than if the inserts had been secured prior to the inception of the work. The defendant does not specifically dispute that installing the inserts before work began would have created less risk for those working in the tank. Nor does the defendant dispute that such negligence was the proximate cause of the plaintiff's injuries.

The jury verdict and judgment of the District Court are affirmed.

---

2. The contract in part stated:
"(7) STEEL TANKS TO BE LINED SHALL BE FURNISHED TO SUBCONTRACTOR READY FOR LINING.

* * * * *

"(G) WITH SCAFFOLD HANGER NOZZLES INSTALLED PER SUBCONTRACTOR'S DATA 74290A."