Clay JACKSON et al *v.* PETIT JEAN
ELECTRIC CO-OP

CA 79-314                                    599 S.W. 2d 402

Court of Appeals of Arkansas
Opinion delivered April 23, 1980
Petition for rehearing denied May 28, 1980
Released for publication May 28, 1980

*Brazil & Roberts and Chester C. Lowe,* for appellants.

*Wright, Lindsey & Jennings,* for appellee.

MARIAN F. PENIX, Judge. This is an appeal from a summary judgment rendered July 19, 1979. The appeal is brought by the plaintiff Clay Jackson and by the intervenor, Seaboard Fire & Marine Insurance Company. Seaboard is the Workers' Compensation Insurance Carrier for Johnson Construction Company, Jackson's employer.

On January 22, 1974, Jackson was injured while working as a lineman for Johnson Construction Company. His employment resulted from a contract between Johnson Construction Co. and Petit Jean Electric Coop Corporation, the defendant in lower court and the appellee here, by which

Johnson would install transmission lines. Jackson sued Petit Jean for $2,500,000.00 to recover damages for injuries sustained as a result of an electrical shock. This shock resulted from his touching a "hot wire" while attempting to build new transmission lines. Jackson's complaint charged Petit Jean with negligence in (1) failure to use ordinary care to insulate wires (2) failure to de-energize its lines during the period of time Jackson worked (3) failure to require Johnson Construction Co. to provide sufficient safety devices or proper supervision and (4) failure to select a competent independent contractor to perform the inherently dangerous work being carried on. An amended complaint alleged negligence on the part of Johnson Construction Company which is chargeable to Petit Jean by virtue of the inherently dangerous nature of the work. Petit Jean moved for summary judgment on the theory Petit Jean was not liable as a matter of law because Jackson was an employee of an independent contractor with whom Petit Jean had contracted to do the work. The summary judgment motion was granted.

Jackson alleges error in the granting of the summary judgment in that there are genuine issues of material facts regarding Petit Jean's liability, the negligence and incompetence of Johnson Construction Company, and Petit Jean's liability based upon the negligent conduct of Jackson's employer being charged to Petit Jean as required by AMI 708.

We must decide whether the summary judgment was proper. Petit Jean had the burden of establishing the material facts were not in dispute.

> A summary judgment is a judgment in bar that results from an application of substantive law to facts that are established beyond reasonable controversy. The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute, and, if not, to render judgment in accordance with the law as applied to the established facts, otherwise to deny the motion for summary judgment and allow the action to proceed to a trial of the disputed facts. The party

moving for summary judgment has the burden of es-
tablishing that the material facts are not in dispute; and
the function of his motion is analogous to the motion for
directed verdict. Moore's Federal Practice (2d Ed) §
56.11, Page 56-197.

Professor Moore further states:

. . . But the real function of summary judgment
procedures is to go beyond the pleadings and present
matters by affidavits, depositions, admissions, answers
to interrogatories or other extraneous material for the
purpose of showing that despite issues of fact raised by
the pleadings, there is no genuine issue of material fact
and that the moving party is entitled to a judgment as a
matter of law. § 56.09, Page 56-167.

We must determine from examination of the record
whether there is any material issue of fact. In doing so every
inference must be resolved in favor of the non-moving party,
appellant Jackson.

I

The threshold question is whether Johnson Construction
Co. was an independent contractor or a subcontractor acting
at the direction of Petit Jean.

An independent contractor may be defined as one who
carries on an independent employment in pursuance of a con-
tract by which he has entire control of the work and the
manner of its performance. The Arkansas Supreme Court has
enunciated the test for determining whether an independent
contractor relationship exists.

An independent contractor is one who, exercising an in-
dependent employment, contracts to do a certain piece
of work according to his own methods, and without be-
ing subject to the control of his employer, except as to
the result of the work. *Moaten* v. *Columbia Cotton Oil Co.,*
193 Ark. 97, 100, 97 S.W. 2d 629, 630 (1936).

Characteristic of an independent contractor relationship is that the employer of the contractor does not possess the power of controlling the person employed by the contractor as to details of the stipulated work. The right to approve or reject the result of the work does not destroy the independent contractor relationship. *Akins* v. *Oklahoma Gas & Electric Co.,* 433 F. Supp. 1345 (E.D. Ark. 1977); *Meyer* v. *Moore,* 195 Ark. 1114, 115 S.W. 2d 1087 (1933); See generally, 41 Am. Jur. 2d 743, Independent Contractors, § 5 et seq; 56 C.J.S. Master and Servant, 24, § 1 et seq.

A careful review of the record, giving every reasonable inference to the appellant Jackson as we are required, supports the position of the appellee Petit Jean. Johnson Construction contracted with Petit Jean to replace some transmission lines. The contract states Johnson Construction is to have sole possession and control of the project. Article VI, Section 1(f) states:

> f. The Project, from the commencement of work to completion, or such earlier date or dates when the Owner may take possession and control in whole or in part as hereinafter provided shall be under the charge and control of the contractor.

Mr. Earl Crabtree, the superintendent for powerline construction for Johnson Construction Co., testified by deposition. He stated:

> Q. What was your understanding both as to the contract and then practiced as to whose responsibility it was for the supervision of the day-to-day work on the job?
>
> A. Day-to-day work responsibility was Earl Smith. He was there every day, he or some other foreman.
>
> Q. But it would be Johnson Construction through its employees.
>
> A. Yes, Sir. They were responsible for it . . .

Q. But it was your understanding as the head person on this job for Johnson Construction Company that all of these things that occurred on the project, you had control over and would be responsible and liable for Johnson Construction Co.?

A. Yes, Sir. That's the way it is.

Q. Did Petit Jean Electric Co-op have any supervisory responsibility for the details of the work on this job?

A. No, sir.

Q. Did they ever attempt to exercise any supervisory responsibility?

A. No, sir.

Q. In other words, no one from Petit Jean Electric Company would come out and tell you when to do something or how to do it or when to start it?

A. No, sir.

Q. To your knowledge, did anyone from Petit Jean Electric Co-op attempt to give any instructions as to the details of their work to any of your employees or job foreman?

A. No, sir.

Q. I am saying when you were working on transformers putting a new transformer in, they [engineers for Petit Jean] knew how close the workman would be to the hotline or primary?

A. No. They didn't know how we were going to work. They give us the specifications and we build it. If we wanted to lean it south, we leaned it south. If we wanted to pull it completely out, we pulled it completely out. They had nothing to do with anything, how we did anything like that.

Q. So they didn't know how you were going to do that job?

A. No.

Q. They didn't go into the details of how the work was going to be done?

A. No.

The contract further stated the construction company was to be solely responsible for all risks incurred in the project.

> . . . And during such period of control by the Contractor all risks in connection with construction of the Project and the materials to be used therein shall be borne by the Contractor. The Contractor shall make good and fully repair all injuries and damages to the Project or any portion thereof under control of the Contractor by reason of any act of God or other casualty or cause whether or not the same shall have occurred by reason of the Contractor's negligence. The Contractor shall hold the Owner harmless from any and all claims for injuries to persons or for damage to property happening by reason of any negligence on the part of the Contractor or any of the Contractor's agents or employees during the control by the Contractor of the Project or any part thereof.

The owner (Petit Jean) did retain the right to inspect or approve the work and to increase or fire employees of Johnson Construction if the project did not progress satisfactorily. The appellant Jackson contends this contractual provision brings this case under the control of *Dunn* v. *Brown & Root, Inc.,* 455 F. 2d 717 (8th Cir. 1972).

The facts in *Dunn,* however, are readily distinguishable. There, Brown & Root, the prime contractor had contracted with the owner to build a paper mill. The plaintiff's employer (subcontractor) contracted with Brown & Root to line the inside of some steel tanks being built as part of this project. The plaintiff was injured when a safety chain gave way and a plat-

form collapsed. At the time of the collapse, Brown & Root was installing inserts in the scaffold hangar nozzles for the platform. The contract between Brown & Root and the plaintiff's employer (subcontractor) had specifically called for Brown & Root to install the inserts prior to the beginning of performance by plaintiff's employer. This type of contractual provision calling for an affirmative act by the employer is vastly different from a provision retaining the right to approve the results of a project.

> The retention by the employer of the right to supervise as to construction as distinguished from the rights to supervise as to the means by which the results should be obtained, does not affect the relationship between the parties. It is only when the employer goes beyond the limit of his contract and commits some affirmative act of negligence, as by some part in the performance of the work other than such general supervision as is necessary to insure its performance, that he is liable. *Meyer* v. *Moore,* supra.

We hold Johnson Construction Co. was an independent contractor. The record reveals there is no material issue of fact as to the status of Johnson Construction Co.

## II

The general rule is that an employer is not liable for injuries sustained by the employees of an independent contractor. *Gordon* v. *Matson,* 246 Ark. 533, 439 S.W. 2d 627 (1969); *Terry* v. *A. P. Green Firebrick Co.,* 164 F. Supp. 184 (E.D. Ark. 1958); *Corban* v. *Skelly Oil Co.,* 256 F. 2d 775 (5th Cir. 1958). There are, however, several exceptions to this general rule. The reason for this rule is that the employer does not possess the power of control over the person employed as to the details of the stipulated work, and hence should not be answerable for an injury resulting from the manner in which the details are carried out by the independent contractor. We must now determine if any of these exceptions are applicable.

Arkansas recognizes an exception to the general rule which states the contractor (owner) will be liable to third

parties who have sustained injury or damages where the work is a nuisance or where damage is the natural and probable result of the work itself. *White River Railway Co.* v. *Batesville & Winerva Telephone Co.,* 81 Ark. 195, 98 S.W. 721 (1906); *Stout Lumber Co.* v. *Reynolds,* 175 Ark. 988, 1 S.W. 2d 77 (1928). This exception is not applicable. The plaintiff is not an outside third party, and the work does not constitute a nuisance.

Another exception states an employer of a prime contractor will be held liable where it is guilty of some affirmative act of negligence which causes or contributes to the injury. *Akins,* supra; *Kennedy* v. *U.S. Construction Co.,* 545 F. 2d 81 (8th Cir. 1976). Appellant argues the appellee was negligent in its failure to de-energize the lines, insulate the wires, provide safety equipment or require Johnson Construction Company to properly supervise the work. The record reveals Johnson Construction contracted to change the lines without de-energizing the lines. Mr. Crabtree in his deposition explained this provision in the following manner.

> Under the contract, Johnson Construction Company was required to work with energized power lines. We weren't supposed to de-energize the line because you bid on energize or de-energize lines. We bid on energized lines, and they expect to keep it on and keep people's lights on . . .

The deposition of Earl Smith, the foreman on the job, contains the following statement:

> It was my responsibility for the supervision of the actual linemen and the other people out there working on the crew.
> Petit Jean Electric Co-op never purported to exercise any supervision or control over me or my employees and how they did their job and when they did it, when they started, when they quit — that sort of thing.

There is no evidence Petit Jean was guilty of negligence. The record reveals no duty of Petit Jean to undertake any of the tasks complained of by the appellant Jackson. Hence, there can be no negligence where there is no duty owed. There is no

material issue of fact as to the role of Petit Jean. We find this exception to be inapplicable.

The final exception to the general rule deals with negligence in the performance of ultrahazardous activities. Simply stated, this exception places liability on the employer for injuries caused by the failure of an independent contractor to exercise due care with respect to the performance of inherently dangerous work.

AMI 708 provides:

> When I use the expression "inherently dangerous", I mean work to be performed that can be safety carried on only by the exercise of special skill and care and which involves a grave risk of serious harm when it is unskillfully or carelessly done.

> Ordinarily an employer is not chargeable with the negligence of an independent contractor; however, when the work to be performed is inherently dangerous, any negligent conduct of an independent contractor is chargeable to his employer.

There is no issue as to the nature of the work being performed by Johnson Construction Co. The work was admittedly ultrahazardous.

This exception, however, is not applicable. The duty, and hence liability, is owed only to third parties. The exception is designed to protect third parties. Jackson, appellant, as an employee of the independent contractor, is not a third party. The Fifth Circuit Court of Appeals applied Arkansas Law in *Corban* v. *Skelly Oil Co.,* supra, and stated:

> It has been stated that 'an employer is liable for injuries caused by the failure of an independent contractor to exercise due care with respect to the performance of work which is inherently dangerous or intrinsically dangerous. The theory upon which liability is based is that a person who engages a contractor to do work of an inherently dangerous character remains subject to an

absolute non-delegable duty to see that it is performed with that degree of care which is appropriate to the circumstances, or, in other words, that all reasonable precautions shall be taken during its performance to the end that third persons may be effectually protected against injury. Thus it appears that the rule is designed to protect third persons. . . . We have seen no case where the inherently dangerous doctrine has been extended so as to permit an employee of an independent contractor to recover from the principal for a breach of the non-delegable duty. (p. 780).

This rule was applied in *Terry* v. *A. P. Green Firebrick Co.,* supra. The Supreme Court of Alaska, in excluding the employee from the class of third persons, gave the following reason:

> The distinction between employees at the work site and the general public is particularly appropriate in the context of ultra hazardous activities. Members of the public, whose proximity to danger would be merely coincidental, would probably be unaware of any danger until it struck; hence, there is no way they could adequately protect or insure themselves against harm. Employees at the work site, on the other hand, would possess some knowledge with respect to the nature of the project and thus could choose whether they wished to be exposed to a dangerous activity. *Morris* v. *City of Soldotna,* 553 P. 2d 474, 481 (Ala. 1976).

See also, *New Mexico Electric Service Co.* v. *Montanez,* 89 N.M. 278, 551 P. 2d 634 (1976); *King* v. *Shelby Rural Electric Cooperative Corp.,* 502 S.W. 2d 659 (Ky. 1974); *Florida Power & Light Co.* v. *Price,* 170 So. 2d 293 (Fla. 1964).

There is no material issue of fact with regard to this issue. Jackson was an employee of Johnson Construction Company, and hence, is not a member of the class sought to be protected by this exception.

Appellant lastly argues the appellee was negligent in hiring a contractor (Johnson Construction Company) which

was incompetent. Arkansas law places a duty on an employer to select a skilled and competent contractor. *Ozan Lumber Co. v. McNeely,* 214 Ark. 657, 217 S.W. 2d 341 (1941). Liability for the negligent selection of a contractor extends, however, only to third parties. *Ozan,* supra. Employees of the contractor are not included within this class. See *Matanuska Electric Assoc. Inc.* v. *Johnson,* 386 P. 2d 698 (Ala. 1963); *Lipka* v. *U.S.,* 369 F. 2d 288 (2d Cir. 1966). Again, there is no question Jackson was an employee. He is not included in the class of persons protected by this rule.

We have closely examined the record and as is proper when reviewing a Summary Judgment, have allowed every inference to be given the appellant as the non-moving party. Even so, we can find no material issue of fact. The trial court correctly granted the appellee's motion for Summary Judgment.

Lest this seems harsh, we might point out the appellant is not without a remedy. He has received $60,991.05 in Workers' Compensation benefits.

Affirmed.